133 N.J. Super. 343 (1975)
336 A.2d 498
EDMOND J. DWYER AND ALBERT C. LISBONA, PLAINTIFFS,
v.
FRED W. JUNG, JR., JUNG AND HOWARD, A PARTNERSHIP, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 19, 1975.
*344 Mr. Joseph C. Glavin, Jr., attorney for plaintiffs.
Messrs. Franzblau, Cohen & Falkin, attorneys for defendants (Mr. S.M. Chris Franzblau, appearing).
KIMMELMAN, J.S.C.
In this action following the termination of a law partnership the court is called upon to determine *345 the enforceability of a restrictive covenant contained in the partnership agreement which parcels out named clients to specific partners upon dissolution and prevents one partner from intruding upon another's clients for a period of five years.
Effective January 1, 1973 the parties entered into a partnership agreement for the practice of law (primarily defense of negligence actions) under the name of "Jung, Dwyer and Lisbona." Their agreement provided that each partner would contribute a stated amount for capital, cooperate in the business of the partnership and share in the partnership net profits in a stated manner. Upon dissolution each partner would be entitled to a repayment of capital and a distributive share of remaining profits and net assets.
The agreement also contained the following provision:
Should the partnership terminate, all clients listed in exhibit "A" shall be designated to certain individual partners. Upon termination, and by virtue of this Agreement, all partners shall be restricted from doing business with a client designated as that of another partner for a period of 5 (five) years.
Exhibit A, annexed thereto, contained a list of insurance carriers; 154 were designated to defendant Jung as his clients, 5 were designated to plaintiff Dwyer as his clients, and none was ascribed to plaintiff Lisbona.
On June 7, 1974 defendant notified plaintiffs that the partnership was dissolved as of June 1, 1974. The business of the partnership continued in de facto fashion until September 1, 1974 when the former partners went their separate ways. Plaintiffs now practice under the name of "Dwyer and Lisbona." Defendant practices under the name of "Jung and Howard."
In this action brought for an accounting defendant, by way of counterclaim, contends that plaintiffs have violated the restrictive covenant contained in the partnership agreement which designates or assigns certain clients to partners in the event of dissolution. Specifically, plaintiffs are charged with *346 attempting to pirate defendant's clients and undermining his relationship with certain named insurance carriers. These charges are denied.
Plaintiffs argue that the quoted provision is void as against public policy. They claim that they entered into the agreement at the insistence of defendant although all parties regarded the provision as unenforceable.
Initially, it must be recognized that lawyer restrictive covenants are to be distinguished from noncompetitive covenants incident to the sale of a business where the covenants are designed to protect the good will of the business for the benefit of the buyer. Solari Industries, Inc. v. Malady, 55 N.J. 571, 576 (1970); Whitmyer Bros. Inc. v. Doyle, 58 N.J. 25, 32 (1971). A lawyer's clients are neither chattels nor merchandise, and his practice and good will may not be offered for sale. Drinker, Legal Ethics, at 161, 189 (1965). In this regard Abraham Lincoln's sage observation (slightly paraphrased) is particularly appropriate: A lawyer's time and advice are his stock in trade.
Nor may lawyer restrictive covenants, whether contained in a partnership agreement or an agreement of employment, be classified within the general category of agreements restricting post-employment competition. The usual employee restrictive covenant is a legitimate business device to protect the business and good will of an employer against various forms of unfair competition. Although not freely as enforceable as a seller's noncompetitive agreement, such restrictive covenant will nevertheless be given effect if it is reasonable under all of the circumstances. "It will generally be found to be reasonable where it simply protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not injurious to the public." Solari, supra, 55 N.J. at 576; Whitmyer, supra, 58 N.J. at 32.
Commercial standards may not be used to evaluate the reasonableness of lawyer restrictive covenants. Strong public policy considerations preclude their applicability. In that sense lawyer restrictions are injurious to the public interest. *347 A client is always entitled to be represented by counsel of his own choosing.[1] See Marshall v. Romano, 10 N.J. Misc. 113, 114, 158 A. 751, 752 (C.P. 1932). The attorney-client relationship is consensual, highly fiduciary on the part of counsel, and he may do nothing which restricts the right of the client to repose confidence in any counsel of his choice. Drinker, supra at 89 et seq. No concept of the practice of law is more deeply rooted. The lawyer's function is to serve, but serve he must with fidelity, devotion and erudition in the highest tradition of his noble profession.
These principles underlie DR 2-108(A) of the Disciplinary Rules of the Code of Professional Responsibility of the American Bar Association which provide:
A lawyer shall not be a party to or participate in a partnership or employment agreement with another lawyer that restricts the right of a lawyer to practice law after the termination of a relationship created by the agreement except as may be provided in a bona fide retirement plan and then only to the extent reasonably necessary to protect the plan.
Opinion No 147 of the Supreme Court's Advisory Committee on Professional Ethics, 92 N.J.L.J. 177 (March 20, 1969), applied these precepts in dealing with a restrictive covenant in a law partnership agreement. The agreement provided that a withdrawing partner shall not open an office or associate with or be employed by any attorney engaged in the practice of law in the county for a period of five years from the date of withdrawal.
In deciding that the provision was unethical, the committee said:
We recognize in the legal profession the existence of a "client market" which is divided among lawyers within a particular locality. But the division of that "market" can be ethically achieved only through individual performance and the "establishment of a well-merited reputation for professional capacity and fidelity to trust." *348 (Original Canon 27, August 27, 1908 (33 A.B.A. Reports 85)) It cannot be achieved by active competition and solicitation of professional employment. The insertion of a restrictive covenant in a law partnership agreement is an attempt to control and divide the "client market" by means other than individual performance. Therefore, it is the opinion of this Committee that the instant restrictive covenant is improper, unworthy of the legal profession, and unethical. See Disciplinary Rule 2-108(A) of the Preliminary Draft of the Code of Professional Responsibility of the American Bar Association Committee on Evaluation of Ethical Standards, dated January 15, 1969.
Question No. 621 (73-9) posed to the New York County Lawyers' Association Committee on Professional Ethics and reported at 97 N.J.L.J. 199 (March 21, 1974) involved the following issue:
Is it proper for a lawyer to agree that upon his withdrawal from membership in a partnership he will not for a period of two years thereafter accept professional employment from any person who was a client of the partnership at the time he ceased being a member?
The committee concluded as follows:
It is not proper for a lawyer to enter into what is in effect a restrictive covenant. DR 2-108(A) provides in substance that a lawyer shall not be a party to or participate in a partnership agreement with another lawyer that restricts the right of a lawyer to practice law after the termination of the partnership, except as a condition to payment of retirement benefits.
In this connection EC 2-26 provides in substance that in furtherance of the objective of the bar to make legal services fully available, a lawyer should not lightly decline proffered employment; and EC 2-31 provides in substance that full availability of legal counsel requires both that persons be able to obtain counsel and that lawyers who undertake representation, complete the work involved.
Reading these provisions together leads to the conclusions that a covenant restricting a lawyer after leaving a partnership from accepting employment by persons who were theretofore clients of the partnership, or from otherwise fully practicing his profession, is "an unwarranted restriction on the right of the lawyer to choose his clients in the event they seek his services, and an unwarranted restriction on the right of the client to choose the lawyer he wishes to represent him. [N.Y. State 129 (1970)]
Reported cases in this area are almost nonexistent. Only one warrants mention. Hicklin v. O'Brien, 11 III. App.2d *349 541, 138 N.E.2d 47 (App. Ct. 1956), upheld a noncompetitive covenant incidental to the sale of a law practice limiting the geographical area in which the selling attorney could practice. While not binding upon this court, it is not at all persuasive. That case, in this court's opinion, incorrectly proceeded upon the theory that the restrictive covenant imposed no undue burden upon the attorney and completely ignored the effect the covenant might have upon potential clients. The court there viewed the matter as a business proposition and failed to respect the underlying ethical considerations affecting the practice of law.
In view of the foregoing it is apparent that an agreement dividing the client market and prohibiting attorneys from representing certain insurance carriers in the defense of negligence cases has the effect of restricting those carriers in their unlimited choice of counsel. Accordingly, the restrictive covenant contained in the partnership agreement of the former law firm of "Jung, Dwyer and Lisbona" is declared to be void as against public policy. All counts of the pleadings relating thereto will be stricken and the case will continue solely for the purpose of effecting a proper accounting amongst the parties.
NOTES
[1] Except, perhaps, in cases of indigency.