Argued and submitted January 17, affirmed in part, reversed in part and remanded May 11, petitions for reconsideration denied June 24, petitions for review denied August 16, 1983 (295 Or 541)

GRAY et al,
*Respondents,*

*v.*

MARTIN,
*Appellant.*

(28902; CA A23898)

663 P2d 1285

Jeffrey M. Batchelor, Portland, argued the cause for appellant. With him on the briefs were George L. Kirklin and Spears, Lubersky, Campbell & Bledsoe, Portland.

Susan P. Graber, Portland, argued the cause for respondents. With her on the brief were George H. Fraser,

Joseph D. Cohen, and Stoel, Rives, Boley, Fraser and Wyse, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

Defendant appeals from the decree of the trial court requiring him to account for attorney fees that he collected after his withdrawal from a law partnership and denying his claim for an accounting from his former partners for certain profits earned after his withdrawal. We affirm in part and reverse in part.

Plaintiffs and defendant practiced law in Bend as partners. On April 17, 1978, they entered into a written partnership agreement, replacing an oral agreement. The written agreement provided for voluntary withdrawal by a partner on 30-days notice to the partnership. Defendant gave notice on September 2, 1980, of his intention to withdraw. His departure was expedited by the partnership, and his last day in the office was September 12.

The partnership agreement, with regard to a partner withdrawing, provides:

"26.   Each client shall be advised that he has the right to direct whether the withdrawing partner or the continuing firm shall continue to handle pending matters. If a client directs that his pending matters shall be handled by the withdrawing partner, the withdrawing partner shall then be entitled to assume all further responsibilities to the client for that matter and to take with him all files and documents pertaining to that employment. The withdrawing partner shall hold the continuing firm harmless from any liability on files taken with him.

"27.   Each partner receiving any files shall immediately reimburse the firm for any advances which it may have made on behalf of that client. The withdrawing partner shall bill all of his unbilled time up to date of withdrawal on those matters completed and, as practicable, on those matters which have not been completed, the monies from which shall be for the firm's account.

"28.   Should the firm, by a majority vote of the remaining partners, decide within the 30-day period after notice of withdrawal, to dissolve the partnership, they may do so, in which case the dissolution decision shall take precedence over the withdrawal notice, which latter notice shall thereafter have no effect."

When defendant left the firm, he took with him the files of 20 clients who had agreed to pay for his services at an hourly rate

and seven clients for whom payment for services was arranged on a contingent fee basis. The contingent fees collected in the seven cases are in dispute here.

Plaintiffs contend that pursuant to the partnership agreement and the Uniform Partnership Law, ORS 68.010 *et seq,* the fees collected by defendant are partnership property for which he is required to give an accounting. Defendant argues that under the partnership agreement his only obligation was to bill his unbilled time, "as practicable," to the date of his withdrawal. He argues that, because it was not "practicable" to bill his time in the contingent fee cases, he is not required to account for the contingent fees later collected.

The trial court decided that under the partnership agreement defendant is required to account for the contingent fees. However, as to six of the seven cases, the court held that defendant should be allowed first to deduct from those fees his usual hourly rate for services performed after withdrawal and to share to the extent of his usual partnership percentage in the remainder of the fee. As to the seventh case, in which by far the largest fee was collected, the court determined that the work on that case had been substantially completed by the time of defendant's withdrawal and allowed him only his usual partnership percentage of the fee collected.

The parties agree that the determination to be made here is the intent of the parties, to be determined from the language of the partnership agreement and the evidence of the parties' negotiations leading up to the execution of the agreement. Such evidence was admitted to explain the circumstances under which the agreement was made in order to put the court in the position of those whose language it was interpreting. *See* ORS 42.220.

The dispute here centers around the language in paragraph 27:

"* * * The withdrawing partner shall bill all of his unbilled time up to date of withdrawal on those matters completed and, as practicable, on those matters which have not been completed, the monies from which shall be for the firm's account."

Defendant contends that the inference to be drawn from this paragraph is that fees later received from matters that it was not "practicable" to bill at the time of withdrawal (i.e., fees in

the seven contingent fee cases) belong to the withdrawing partner. Plaintiffs argue, making reference to the Uniform Partnership Law, that all of the on-going files are partnership property and that moneys received from completion of partnership business belong to the partnership, whenever received. *See* ORS 68.130; ORS 68.340.

We conclude that it is more likely that plaintiffs' interpretation of the contract was intended by the parties. The contract is ambiguous at best. The testimony of the parties regarding the discussions leading up to the adoption of the agreement sheds little light on the intended meaning of paragraph 27. Both parties rely on earlier drafts of the partnership agreement in support of their contentions. Two of the early drafts contained the following language under the section entitled "Withdrawal":

"*.* * The withdrawing partner shall hold the continuing firm harmless from any liability on files taken with him. Thereafter, the withdrawing partner shall bill the client for, and be entitled to collect for, disbursements theretofore made and services theretofore rendered in connection with that matter as well as for subsequent services and disbursements."

Although this language would give defendant the right to retain the moneys collected in the contingent fee cases at issue here, we are not certain what is to be derived from the fact that this language was deleted in favor of the language contained in the agreement as adopted.

Plaintiffs rely on provisions of the Uniform Partnership Law:

"All property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership is partnership property." ORS 68.130.

"(1) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him *without the consent of the other partners* from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property." ORS 68.340. (Emphasis supplied.)

However, the question remains whether, under the partnership agreement, the partners "consented" to defendant's retaining the fees collected after his withdrawal from the firm.

The most informative portion of the record regarding the intention of the partners in adopting paragraph 27 is found in Exhibit A to the agreement. That provides that three of the senior partners would receive an additional $15,000 on leaving the firm along with the amounts otherwise provided for in the agreement. The exhibit explains:

> "The reason for this action is that when each of the above attorneys became a partner he bought an interest in the partnership by paying a certain amount over a period of time to the other existing partners.

> "The policy of the partnership has since changed and now is that no new partner shall purchase an interest in the partnership, nor shall he be paid for any interest in the partnership, when for any reason he ceases to be a partner of this partnership, other than his vested interest as outlined in the partnership agreement."

This is described by plaintiffs as a "nothing in - nothing out" policy. We do not believe that it is consistent with this "nothing in - nothing out" policy that a withdrawing partner should take the files of pending cases, files that are certainly partnership property, *see* ORS 68.130; *Platt v. Henderson,* 227 Or 212, 361 P2d 73 (1961), and collect fees on those files without accounting to the continuing firm for the moneys received. Defendant's interpretation that moneys collected on uncompleted matters that could be billed at the time of withdrawal are for the firm's account, but that moneys collected later belong solely to the withdrawing partner, does not, as far as we can see, provide a dividing point consistent with the "nothing in - nothing out" policy.

It would seem that partners entering an agreement such as this would expect that individual withdrawing partners be treated relatively equally. However, under defendant's interpretation of the agreement, a partner withdrawing in defendant's position, with a very large contingent fee case nearly concluded, or with a large proportion of contingent fee cases, could come away from the partnership with significantly more than a partner whose clients paid primarily on an hourly basis. We conclude that the trial court was correct in interpreting the agreement to require defendant to account for the fees collected in the contingent fee cases that he took when he withdrew from the firm.

We are not persuaded otherwise by defendant's argument that, if the firm was concerned about the value of the files he was taking, it could have voted to dissolve and then form a new partnership. Defendant's argument refers to paragraphs 33 to 40 of the agreement, which provide in pertinent part:

"33.    The firm may terminate the partnership effective on such date as it chooses. The effective date shall become the 'date of termination.' Those individuals exercising the majority vote may choose to re-establish the firm business following such termination using the same name (excluding from that name only those who do not remain) and continue to rent the premises *and retain firm assets except for personally owned items* which may be removed by those not remaining. However, payment must then be made to each partner excluded, as though he were deceased or retired; that is, he will be paid Items A, B and D under paragraph 11 (Payment for Partner's Interest).

"34.    If instead a majority does not choose to so re-establish the firm, then the firm will liquidate. After payment of debts (or reserves for them are set aside), assets will be divided according to the percentages of participation.

"* * * * *

"36.    All partners will attempt to complete all work before termination date so that matters can be billed and collected. Each partner shall, as practicable, bill all of his unbilled time up to date of termination on those matters which have not been completed.

"37.    As soon as practicable, the firm will assign all pending matters, including the files, to one or another of the partners, who most nearly may be considered a client of that partner. Any client, however, may choose by whom he prefers to be represented * * *. Thereafter such partner shall bill the client for, and be entitled to collect for, disbursements theretofore made and unbilled services theretofore rendered in connection with that matter, as well as for subsequent services and disbursements. No partner shall collect receivables outstanding on the date of termination; rather the firm in liquidation will receive and account for the same. * * *

"* * * * *

"38.    Regarding any file which has substantial value, the firm will establish a value as of the date of termination. This may be applicable to probate matters, negligence cases, corporate affairs, workmen's compensation cases and the like. It will

be based upon such factors as time expended upon it in the past, time likely to be spent upon it in the future and potential fees. Such value shall become an asset of the firm. When such file is eventually assigned to a partner, such value will be treated as a partial distribution of his share of assets represented by his Percentage of Participation. It is not contemplated that all files must be so valued; only those which the firm believes have a substantial value because of its potential fee producing likelihood. To the extent that files assigned to a partner exceed his proportionate share as evidenced by his Percentage of Participation, he shall pay such excess to the liquidating firm upon final determination of the account. The firm will then make such distribution of cash or other assets to those partners not receiving their proportionate share, in order to accomplish an approximate distribution according to the Percentage of Participation. (Emphasis supplied.)

"* * * * *."

We do not believe that the provisions defendant relies on are applicable in this situation. Paragraph 33 allows the firm to terminate and a majority to re-establish the partnership immediately. However, if that is done, the continuing firm retains firm assets, except for personally owned items, and must pay those excluded from the partnership as if they were deceased or retired, an amount twice as much as would be received by a withdrawing partner. On the other hand, if the majority of the partners do not re-establish the firm, it is liquidated. That is the point at which the files must be valued and the partnership assets divided according to each partner's percentage of participation. A division of the firm assets takes place only when the firm is liquidated. Those partners who are excluded are compensated by receiving the compensation that would ordinarily be paid to deceased or retiring partners.

One of the purposes of a partnership agreement such as the one here is to allow the partnership to continue even though partners may withdraw. We do not believe that it was intended that the firm necessarily be liquidated and its assets distributed in this type of situation.

Defendant's counterclaim alleged that he is entitled to the benefits provided in paragraph 11C of the partnerhip agreement and that he should not be precluded from receiving such benefits by paragraph 25, because it is an unenforcible covenant not to compete. He contends that the trial court

erred in deciding that paragraph 25 of the agreement is not a covenant not to compete and in entering judgment against defendant on his counterclaim. Paragraph 25 provides that

"Any partner may withdraw with 30 days written notice. He shall be paid only as to Items A, B, and C under paragraph 11 (Payment for partner's Interest) unless he resumes the active practice of law in Jefferson, Crook or Deschutes counties, in which case all payments under Item C otherwise due but not paid, need not be paid and responsibility to do so will terminate."

Paragraph 11 provides:

"The payment for a partner's interest in the partnership will be on the following basis, calculated as of his death, of the effective date of retirement, withdrawal or expulsion.

"Item A. Any unpaid draw.

"Item B. His Capital Account.

"\* \* \* \* \*

"Item C. Withdrawal

"For 24 months following the effective date of withdrawal, such partner will receive one-fourth of his share of such profits based upon the average percentage of participation which he and the firm held during the preceding 36 months. The effect is to give him approximately one-half of what he would have received from the firm by draws or any other division of profits for one year — except it will be payable over a two-year period. \* \* \*"

Defendant argues that paragraph 25 is void as against public policy, because it violates the Rules of Professional Responsibility. DR 2-108(A) provides:

"A lawyer shall not be a party to or participate in a partnership or employment agreement with another lawyer that restricts the right of a lawyer to practice law after the termination of a relationship created by the agreement, except as a condition to payment of retirement benefits."

Plaintiffs, on the other hand, argue that the provision does not restrict defendant's right to practice law and that, if it does, it is ethical as a condition to payment of retirement benefits.

Paragraph 25 fits squarely within the prohibition contained in DR 2-108(A). It affects defendant's right to practice law in Jefferson, Crook or Deschutes counties by requiring

that if he does so he loses the benefits that would otherwise be his. This is certainly a restriction on his right to practice. The agreement is not a condition to payment of retirement benefits as plaintiffs claim. If retirement has the same meaning as withdrawal in DR 2-108(A), then the disciplinary rule has no meaning. Every termination of a relationship between law partners would be a retirement, and agreements restricting the right to practice would always be allowed. We conclude that Paragraph 25 of the partnership agreement violates DR 2-108(A).

The question remains whether the fact that the paragraph violates a disciplinary rule makes it unenforcible. We conclude that it does in this case. The purpose of the rule is to govern the relationships between attorneys for the protection of the public. In *Hendrix v. McKee,* 281 Or 123, 128, 575 P2d 134 (1978), the court stated:

> "If the consideration for the contract or its agreed purpose is illegal or against public policy on its face, it will not be enforced. * * *"

Paragraph 25 on its face violates the public policy that prohibits restrictions on the right of attorneys to practice law, as stated in the disciplinary rule.[1] We conclude that the trial court erred in dismissing defendant's counterclaim.

Affirmed in part; reversed in part; and remanded.

---

[1] Although it might be argued that under *Brown v. Oregon State Bar,* 293 Or 446, 451-52, 648 P2d 1289 (1982), the violation of a disciplinary rule is a matter that requires interpretation and enforcement by the Supreme Court in its supervisory and disciplinary capacity over the Bar, we believe the situation presented here is distinguishable from that presented in *Brown.* In that case the Attorney General sought a declaration of whether his conduct was ethical under the disciplinary rules. The Supreme Court held that the controversy was not justiciable under ORS ch 28 "because an interpretation of a disciplinary rule by the circuit court cannot be a binding determination." 293 Or at 451. However, in this case a contract dispute between the parties requires resolution. In resolving that dispute, we believe that courts other than the Supreme Court may apply the disciplinary rules in determining whether the contract provisions are enforcible.