247 N.J. Super. 266 (1991)
588 A.2d 1287
CYNTHIA M. JACOB AND RICHARD F. COLLIER, JR., EACH INDIVIDUALLY AND SHAREHOLDERS OF NORRIS, MCLAUGHLIN & MARCUS, A NEW JERSEY CORPORATION, PLAINTIFFS-RESPONDENTS,
v.
NORRIS, MCLAUGHLIN & MARCUS, A NEW JERSEY CORPORATION, RICHARD A. NORRIS, THOMAS P. MCLAUGHLIN, G. ROBERT MARCUS, PETER D. HUTCHEON, HERBERT S. FORD, JOEL N. JACOBSON, BRUCE E. MANTELL, WILLIAM C. SLATTERY, WALTER G. REINHARD, VICTOR S. ELGORT, BRUCE P. MCMORAN, KEVIN T. O'BRIEN, M. KAREN THOMPSON, JOHN J. EAGAN, STEPHEN M. ASPERO AND JAMES H. LASKEY, INDIVIDUALLY AND AS SHAREHOLDERS AND OFFICERS OF NORRIS, MCLAUGHLIN & MARCUS, A NEW JERSEY CORPORATION, AND AS PARTNERS OF SOMERSET LEASING ASSOCIATES, A NEW JERSEY PARTNERSHIP, DEFENDANTS-APPELLANTS.
BRUCE P. MCMORAN, INDIVIDUALLY AND AS A SHAREHOLDER OF NORRIS, MCLAUGHLIN & MARCUS, A NEW JERSEY CORPORATION, DEFENDANT-CROSS-CLAIMANT, THIRD-PARTY PLAINTIFF,
v.
NORRIS, MCLAUGHLIN & MARCUS, A NEW JERSEY CORPORATION, RICHARD A. NORRIS, THOMAS P. MCLAUGHLIN, G. ROBERT MARCUS, PETER D. HUTCHEON, CYNTHIA M. JACOB, HERBERT S. FORD, PETER R. KNIPE, JOEL N. JACOBSON, BRUCE E. MANTELL, WILLIAM C. SLATTERY, WALTER G. REINHARD, VICTOR S. ELGORT, RICHARD F. COLLIER, JR., KEVIN T. O'BRIEN, M. KAREN THOMPSON, JOHN J. EAGAN, STEPHEN M. ASPERO, JAMES H. LASKEY, KENNETH R. SCHAEFFER, DAVID R. STRICKLER AND JOHN L. MESROBIAN, INDIVIDUALLY AND AS SHAREHOLDERS AND OFFICERS OF NORRIS, MCLAUGHLIN & MARCUS, THIRD-PARTY DEFENDANTS.
NORRIS, MCLAUGHLIN & MARCUS, A NEW JERSEY CORPORATION, FOURTH-PARTY PLAINTIFF,
v.
MCMORAN & PALMIERI, P.C., A NEW JERSEY CORPORATION, WILLIAM BEHAN AND FRANK PALMIERI, INDIVIDUALLY AND AS SHAREHOLDERS AND OFFICERS OF MCMORAN & PALMIERI, P.C., FOURTH-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 12, 1991.
Decided April 10, 1991.
*268 Before Judges ANTELL, O'BRIEN and SCALERA.
Laurence B. Orloff argued the cause for appellants Norris, McLaughlin & Marcus (Orloff, Lowenbach, Stifelman & Siegel, attorneys; Laurence B. Orloff, of counsel; Laurence B. Orloff and Samuel Feldman, on the brief).
Frederick L. Whitmer argued the cause for respondent Cynthia M. Jacob (Pitney, Hardin, Kipp & Szuch, attorneys; Frederick L. Whitmer, on the brief).
James F. Keegan argued the cause for respondent Richard F. Collier, Jr. (Bendit, Weinstock & Sharbaugh, attorneys; James F. Keegan, on the brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
Defendant Norris, McLaughlin & Marcus is a professional corporation engaged in the practice of law. Plaintiffs are attorneys at law who terminated their membership in defendant firm around October 19, 1987, ("termination date") and brought this suit for compensation under a Service Termination Agreement dated February 11, 1986. They now practice law under the firm name of Collier, Jacob and Sweet. David Sweet is a former associate of defendant who also terminated his association with defendant to form a partnership with plaintiffs.
Defendant denies its liability under the Service Termination Agreement. It asserts that because plaintiffs have been representing clients who were clients of defendant on the termination date and because plaintiffs solicited professional and *269 paraprofessional employees of defendant to join or be employed by the law firm which they formed on the day before their departure, the Service Termination Agreement imposes no obligation to pay benefits.
This appeal is taken by defendant from an order for partial summary judgment entered on the third count of the complaint, which awards damages to plaintiffs and invalidates those provisions of the Service Termination Agreement upon which defendant relied. The trial court concluded that the nullified provisions constituted a restriction upon plaintiffs' right to practice law and were therefore violative of sound public policy.
Defendant purports to appeal as of right on the ground that the order was entered as a final judgment by the trial court pursuant to its determination that there was "no just reason for delay" under R. 4:42-2. We have previously had occasion to state that the only intention of that rule "is to permit execution on a partial summary judgment fully adjudicating a separable claim for affirmative relief of all claims by or against a single party; its intention is not to provide a mechanism for interlocutory appellate review." Taylor by Wurgaft v. General Elec. Co., 208 N.J. Super. 207, 211, 505 A.2d 190 (App.Div. 1986), certif. denied, 104 N.J. 379, 517 A.2d 388 (1986). The rule specifically states that final judgment may be entered only if the order will thereby be rendered enforceable and the trial court certifies "that there is no just reason for delay of such enforcement." R. 4:42-2 (emphasis ours).
The grant of leave for interlocutory review lies within the exclusive jurisdiction of the Appellate Division. R. 2:2-4. R. 4:42-2 "was not intended to permit trial judges to control appellate calendars by granting, in effect, a motion for leave to appeal." Delbridge v. Jann Holding Co., 164 N.J. Super. 506, 510, 397 A.2d 356 (App.Div. 1978). The matter is therefore subject to dismissal on our own motion. Because of the public importance of the issue presented, however, we grant leave to *270 appeal nunc pro tunc and proceed to a consideration of the merits.
The relationship among and between defendant and its members was controlled primarily by two agreements, a Buy-Sell Agreement and a Service Termination Agreement. The Buy-Sell Agreement governed the valuation and transfer of the separate members' stock interest in the corporation upon death, disability and termination of employment. Plaintiffs have received their full entitlement under that agreement and no issue is raised with respect thereto.
The Service Termination Agreement was designed to provide shareholders with additional compensation over and above their equity interest in the firm upon termination of employment. Paragraph 1 recites that in consideration of the member's services to the firm, the firm "agrees to pay the applicable amount of termination compensation (if any) to the Member and to provide related benefits appropriate to the category of termination as set forth in this Paragraph...." Paragraph 1a sets forth the compensation appropriate to the termination category described as a member's non-competitive voluntary departure. Paragraph 1b deals with competitive voluntary departures. Upon a non-competitive departure the firm must pay the departing member "an amount equal to the sum of: ... 25% X 110% of the Member's annual draw applicable immediately prior to departure."[1] Upon a competitive voluntary departure no termination compensation is paid, and the member is given only the right to purchase from the law firm life insurance which the firm maintained on the departing member's life under the Buy-Sell Agreement. Paragraph 2a defines a competitive departure to have occurred:
if within one (1) year of the date of termination of employment the Member either engages in the practice of law involving providing professional services to clients of the Law Firm, who are clients of the Law Firm at the date of termination, or solicits other professional and/or paraprofessional employees of the Law Firm to engage in the practice of law with the departed Member, *271 except if the Member is employed by a governmental agency (including serving in a judicial capacity) or by a corporation, partnership or other business or non-profit entity where the Member provides legal services only to such corporation, partnership or entity.
Following their departure, plaintiffs and David Sweet furnished defendant with lists of those clients who would be leaving defendant to be served by plaintiffs' new firm. It is estimated that these represent annual gross billings of $500,000.
Because Paragraph 1 of the Service Termination Agreement provides compensation only to those departing members who, for one year, rendered no services to clients who were clients of defendant on the termination date, the trial court found that under the Rules of Professional Conduct the arrangement was a restriction upon plaintiffs' right to practice law. The pertinent rule of professional conduct is RPC 5.6, which states:
A lawyer shall not participate in offering or making: (a) a partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement.
Although the RPC is stated in terms of a lawyer's right to practice his or her profession, the purpose of the rule is to preserve unencumbered the right of a client to be represented by counsel of his own choosing. Dwyer v. Jung, 133 N.J. Super. 343, 347, 336 A.2d 498 (Ch.Div. 1975), aff'd, 137 N.J. Super. 135, 348 A.2d 208 (App.Div. 1975). The theory of the ruling under review is that because the termination benefits offered for non-competitive departures furnish plaintiffs an incentive to decline representation of firm clients, Paragraphs 1a and 1b of the Service Termination Agreement function together as a restriction. We see the matter in a different light than did the trial court and reverse the order under review to the extent that it enters summary judgment in favor of plaintiffs.
It should be made clear that defendant has not sought to enjoin or interfere with plaintiffs' right to represent any clients they choose to represent or to restrict their practice of law in any other respect. The case presents only the question of plaintiffs' right to be paid termination benefits under the Service Termination Agreement. Defendant's position, simply *272 stated, is that because of plaintiffs' deliberate undertaking to represent defendant's former clients the obligation to pay termination compensation never came into existence.
In our view, the Service Termination Agreement reflects a careful attempt to foresee and provide for the financial requirements of departing members. Indeed, it recites in its preamble the intention of the firm and the member "to provide in this Agreement for the compensation to be paid to Member following termination of his employment as an officer of the Law Firm." Anticipating that upon departure some members will take with them a substantial client base, the fact that no compensation is paid to them under Paragraph 1b takes account of the income flow that the departing member will receive from those clients. It also takes into account the fact that defendant's receipt of revenue will be correspondingly diminished by the lost clientele. On the other hand, where none of the firm's clients follow the departing member, through the choice either of the departing member or the clients, compensation is paid in the prescribed amount to lessen the financial impact of departure upon the departing member.
In both cases, under Paragraphs 1a and 1b, payment or nonpayment of termination compensation is provided for in a way that strikes a reasonable balance between the probable needs of a departing member and the consequences to the firm of the member's departure, that is, whether with or without the firm's clients. Thus, the Service Termination Agreement gives the departing member a choice of alternatives in accordance with his or her best interests. The decision whether to qualify for termination compensation by making a non-competitive departure is left entirely to the departing member. This is a reasonable arrangement to allow for the interplay of legitimate financial considerations. If its incidental effect may be to discourage plaintiffs from rendering professional services for a period of one year to defendant's clients, we do not regard this as a restriction upon their right to practice law within the meaning of RPC 5.6.
*273 Plaintiffs argue that Paragraphs 1b and 2a mandate a forfeiture of benefits to which they would otherwise be entitled and that their right to benefits is severable from those provisions. We disagree. The right to termination compensation is inextricably coupled with the condition specified in Paragraph 1a. It has no existence independent of that provision within the Service Termination Agreement. If the conditions mentioned in Paragraph 1a have not been satisfied, neither the Service Termination Agreement nor any other agreement provides for the payment of termination compensation.
The frailty of plaintiffs' contention that the duty to pay termination compensation is severable from the conditions prescribed by Paragraphs 1 and 2a is exposed by extending it to the limit of its logic. If accepted, it would mean that, regardless of the number of competitive departures at any time, the firm's obligation to pay departing members termination compensation would remain enforceable despite the contemporaneous loss of client revenue that goes with the departing members. It cannot be rationally supposed that this firm of attorneys intended its debt obligation to undergo a substantial increase just when its ability to pay is being substantially eroded. Yet, this would have to follow from plaintiffs' reasoning. As we explained before, the purpose of termination compensation was to provide financial assistance to a departing member only under circumstances not inconsistent with defendant's economic interest.
Finally, it seems that plaintiffs' claim should be barred on basic equitable considerations. The Service Termination Agreement was voluntarily entered into by plaintiffs with the defendant firm of which they were substantial shareholders. RPC 5.6, which they invoke to compel payment of termination benefits, states that "[a] lawyer shall not participate in offering or making" (emphasis ours) a partnership agreement that restricts the rights of a lawyer to practice after the relationship terminates. Plaintiffs have as much participated in the making of this agreement as has defendant. Yet they seek to have it *274 interpreted as a violation of the RPC so that they can receive its benefits, even though they have failed to perform its conditions precedent to payment and defendant has received none of its benefits. If in fact the Service Termination Agreement is illegal, plaintiffs should bear the burden of illegality equally with defendant. It would be as unjust to enrich plaintiffs by the amount of the termination benefits under these circumstances as it would be to enrich defendant by allowing it to retain those benefits had plaintiffs performed their part of the bargain.
To support their claim that the non-payment of termination benefits involves a restriction upon their right to practice law, plaintiffs rely on Dwyer v. Jung, supra; Anderson v. Aspelmeier, Fisch, Power, Warner & Engberg, 461 N.W.2d 598 (Iowa 1990); Cohen v. Lord, Day & Lord, 75 N.Y.2d 95, 551 N.Y.S.2d 157, 550 N.E.2d 410 (1989); Gray v. Martin, 63 Or. App. 173, 663 P.2d 1285 (1983), review denied, 295 Or. 541, 668 P.2d 384 (1983). Dwyer simply decided that an agreement allocating clients among partners of a law firm in the event of dissolution could not be enforced under RPC 5.6. That principle is not being questioned here and, as we made clear earlier, defendant is not seeking to impose any such restriction upon the plaintiffs or upon such of defendant's clients who choose to engage plaintiffs' services.
Anderson was decided by the Supreme Court of Iowa. There, a law firm refused to pay a withdrawing partner the full value of his interest in the firm, giving as its reason that under the partnership agreement plaintiff's withdrawal from the firm with a large number of the firm's clients was "`an act which is detrimental to the partnership which affects the value of the remaining partners' interest in the partnership.'" Anderson, 461 N.W.2d at 599 (quoting law firm's partnership agreement). It was there held that the firm's refusal to pay the departing partner the full value of his interest could not be sanctioned under an Iowa canon of professional responsibility identical to RPC 5.6. The significant distinction between that case and this *275 is that in Anderson the law firm was trying to restrict the departing member's practice by working a forfeiture of money which he had already earned by reason of his membership in the firm and to which he was clearly otherwise entitled. The plaintiff's right to the monies did not arise from a contract under which, as here, the obligation comes into existence only upon the performance of specified conditions.
In Cohen the New York Court of Appeals considered the following provision in a law partnership agreement:
Notwithstanding anything in this Article * * * to the contrary, if a Partner withdraws from the Partnership and without the prior written consent of the Executive Committee continues to practice law in any state or other jurisdiction in which the Partnership maintains an office or any contiguous jurisdiction, either as a lawyer in private practice or as a counsel employed by a business firm, he shall have no further interest in and there shall be paid to him no proportion of the net profits of the Partnership collected thereafter, whether for services rendered before or after his withdrawal.
Cohen, at 97, 551 N.Y.S.2d at 157-58, 550 N.E.2d at 410-11. Acting under the foregoing provision, the firm refused to pay plaintiff, a departing partner, his share in the net profits of the firm that had been earned but not yet collected at the time of his departure. As in Anderson, the court concluded that this was a "monetary penalty," id., at 98, 551 N.Y.S.2d at 158, 550 N.E.2d at 411, in order to enforce a restriction upon the practice of law. Also as in Anderson, the monies withheld had been earned by plaintiff during the time that he was a member of the firm. The case is therefore distinguishable from this for the same reasons as is Anderson.
Gray also involved monies that formed part of the "payment for a partner's interest in the partnership," 663 P.2d at 1290. The partnership agreement provided that those monies need not be paid if a departing partner resumed the practice of law in any of three designated counties. Noting that allowing enforcement of that provision would deprive the departing partner of benefits "that would otherwise be his," the court concluded that the provision was a restriction upon the practice of law and was therefore unenforceable. Like Cohen and *276 Anderson, Gray is distinguishable from the case before us in that we are here concerned with a claim for money representing not a partnership interest, nor for money otherwise earned by plaintiffs, but a claim that is merely inchoate and conditional within the context of the Service Termination Agreement.
Further distinguishing Gray and Cohen is the fact that the restrictions there considered were broadly designed to suppress all professional activity by the departing member that could be competitive in any way to the interests of the firm. In both cases the restrictions applied to the geographic areas in which the departing partner had previously practiced his profession and seemed to apply for an unlimited period of time. Here, the noncompetitive departure only involves the agreement not to represent defendant's clientele at the time of plaintiffs' departure and only for a period of one year. Thus, the conditions of such a departure are reasonably limited and plausibly related to preventing a double impact on the economic base from which the departing members' termination benefits are to be drawn, the first by paying out benefits, and the second by losing the clients.
Defendant also appeals from so much of the order below as denied its motion for partial summary judgment. We decline to disturb that determination because the issues raised here involve "highly significant policy considerations" and should not be decided on less than a full record. Jackson v. Muhlenberg Hospital, 53 N.J. 138, 142, 249 A.2d 65 (1969). Furthermore, for reasons to be stated, it may be that on remand genuine issues of material fact will emerge.
Although not mentioned by the parties, we note the possible relevance to this matter of RPC 1.16(b), (c). These rules provide:
(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if: * * *
(5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

*277 (6) other good cause for withdrawal exists.
(c) When required to do so by rule or when ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.
Since Paragraph 1 of the Service Termination Agreement may be read to require plaintiffs to withdraw their services from clients of the firm on work in progress, fact questions may exist in particular cases as to whether, by withdrawing their services from certain clients, plaintiffs would be offending RPC 1.16. If such fact questions are presented, these should be explored at a plenary hearing. Findings should be made, and a determination should be reached as to the significance thereof to the interpretation and application of Paragraphs 1 and 2(a) of the Service Termination Agreement, particularly in light of RPC 8.4, defining professional misconduct.
So much of the orders of November 13, 1989, and May 8, 1990, as nullify Paragraphs 1(b) and 2(a) of the Service Termination Agreement and award money damages to plaintiffs on the third count of the complaint are reversed. In other respects the orders are affirmed.
NOTES
[1] Paragraph 1a also provides certain additional benefits with which we are not here concerned.