Bertram Harnett, J.
A neighborhood tax preparing business depends on many of the same clients returning each year. To this end, the location of the business is important and forms part of its goodwill. Were a partner in the business to buy in his own name the building housing it and then eject the partnership at the end of the lease, that would be an intolerable breach of fiduciary relationship. (Mitchell v. Reed, 61 N. Y., 123; Meinhard v. Salmon, 249 N. Y. 458; Boxill v. Boxill, 201 Misc. 386.) But, what if that partner first serves notice to dissolve the partnership before buying the building; can he still be held to the same duties to his partners ?
Plaintiffs Lavin and Dillworth and defendant Ehrlich were partners in a storefront tax preparing business. Ehrlich managed the business, Lavin and Dillworth were essentially investors. By letter dated October 9, 1973, Ehrlich announced his immediate withdrawal from and 'dissolution of the partnership. Later that month, he contracted to buy the storefront property from the landlord, and, in January, 1974, he took title. The •lease on the storefront ran until April 30, 1974 and Ehrlich would not negotiate a new lease with the partnership which he considered dissolved.
His partners claim that Ehrlich has 'breached his fiduciary duties in buying this property and they ask the court to rule that he holds it in constructive trust for the partnership.
They first assert that Ehrlich could not unilaterally dissolve the partnership in contravention of the express withdrawal provisions of the partnership agreement. A contract provision does permit a withdrawing partner to give the others first option •to buy him out on terms to be mutually agreeable, and failing in that gives him the right to sell to a stranger. However, there is no stranger poised to buy, nor is there any indication that one portends. Indeed, the provision on withdrawal is at best an agreement to agree. Accordingly, the agreement is not in point here.
*249 Ehrlic-h argues that the agreement provides no specific term of life for the partnership, and so it is a partnership at will, to be dissolved at the insistence of any partner. (Partnership Law, § 62, subd. 1, par. [b].) This is true, and Ehrlich’s letter of October 9, 1973 effectively triggered the dissolution of the partnership, and should have set the winding up in motion towards final termination.
However, this dissolution did not free Ehrlich of all fiduciary relationship to the partnership. “ On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed.” (Partnership Law, § 61.) There may be a relaxation of a partner’s duties to his copartners in relationships that look to the future of the newly dissolved partnership. (Bayer v. Bayer, 215 App. Div. 454.) But, in dealings effecting the winding up of the partnership and the proper preservation of partnership assets during that time, “the good faith and full disclosure exacted of partners continues ”. (Hamilton Co. v. Hamilton Tile Corp., 23 Misc 2d 589.)
Moreover, the court is satisfied on the record that Ehrlich instituted and carried on negotiations for the building’s purchase during the vital partnership tenure, and completed them later, without offering the ultimate deal to his partners. The opportunity to purchase the property and insure continued possession of the goodwill asset embodied in the location should have been offered to the partnership. Ehrlich breached his fiduciary duty in not m!aking that offer and in appropriating this important partnership asset to himself.
Apparently, Ehrlich believed the only accountable partnership item other than furniture was the list of customer names, which he felt was not too valuable since the taxpayers’ records were (according to him) not transferable. However, he is mistaken on two accounts. The building acquisition was a partnership opportunity, and the tax records of the customers can be transferred with the lists under suitable conditions. (See Treas. Beg., § 301.7216-2, subds. [1], [m]; 26 CFB 301.7216-2 [1], [m].)
Nothing in the record persuades the court that Ehrlich intended to return taxpayers ’ records to them.
At the bottom, Ehrlich is doing something hopefully achievable from a technical standpoint, but sadly lacking in equity. He was the actual conductor of the business. He went out and grabbed the building, and now hopes, with this maneuver and his possession of the list of names and past tax return files (which he has undisputedly) to capitalize on the partnership location *250 and goodwill to the exclusion of his partners. We cannot accept his strategy.
Fairness to all now requires the dissolution of the partnership, with the sale of its assets. This includes not only the building, but -also the list of customer names and their permissible records. After the conference with the court, the parties agreed on the division of cash on hand and payment of bills. The plaintiffs, accordingly, withdrew as resolved that portion of the complaint requiring an accounting by Ehrlich.
Accordingly, the court finds Ehrlich holds the property in constructive trust for the partnership and must surrender his right, title, and interest to the partnership if offered two thirds of the purchase price he paid by the remaining partners Lavin and Dillworth on or before January 31,1975.
On motion of either party, the court shall appoint a receiver for the purpose of winding up the partnership, selling its assets, and disbursing the net proceeds to the partners.