■ In the Matter of the Arbitration between SHELDON SILVERBERG, Appellant and RUBEN SCHWARTZ, Respondent.—In a proceeding to stay arbitration, petitioner appeals, as limited by his brief, from so much of a judgment of the Supreme Court, Nassau County, dated April 6, 1979, as

denied his application, consolidated the arbitration demanded by respondent with that demanded by petitioner, and directed that the parties proceed to arbitration. Judgment modified, on the law, by deleting from the first decretal paragraph thereof the words "denied in its entirety" and substituting therefor the following, "granted as to paragraphs enumerated '1' and '2' in their entirety, and as to that part of paragraph '3' that demands punitive damages, under the heading 'Relief Sought' in respondent's demand for arbitration and is otherwise denied". As so modified, judgment affirmed insofar as appealed from, without costs or disbursements. The parties are two experienced attorneys whose 12-year partnership terminated, resulting in a dispute concerning various provisions of the partnership agreement including the distribution of the partnership assets. The agreement contains a broad arbitration clause and each party seeks to arbitrate his grievance with the other while attempting to stay the arbitration of each other's demand. On this appeal we are asked by the petitioner to stay the arbitration proceeding instituted by the respondent on the ground that public policy precludes the arbitrator from considering the issues raised in the respondent's demand. Special Term denied the petitioner's application for a stay, holding that the agreement does not "lead inalterably to a conclusion that public policy will be violated in every conceivable instance." For the reasons set forth below, we modify the judgment of Special Term. Courts will not invoke the public policy limitation on an arbitrator's power unless that policy involves strong and substantial public issues (see *Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist.*, 45 NY2d 898; *Matter of Lewis v Finnerty,* 70 AD2d 174). The issues raised by petitioner involve such a public policy. The partnership agreement provides, *inter alia:* "SIXTH * * * The parties hereto agree that, upon the termination of this firm, each party shall continue to represent all his own clients and such new clients as each of them was responsible in obtaining for the new firm. Unless a client directs otherwise in writing, neither party will represent the clients of the other for a period of at least eighteen (18) months after termination of the firm, and each party shall not cause any of such clients to terminate their present and future attorney-client relationship existing between each party and his client. For a period of eighteen (18) months after termination, if any client belonging to SCHWARTZ shall thereafter be represented by SILVERBERG or any client of SILVERBERG's is thereafter represented by SCHWARTZ, each of the parties, as the case may be, agrees that eighty percent (80%) of the gross fees received, realized or to be realized for work done during such period of eighteen (18) months from such client or clients, even though the fees may be received subsequent to said eighteen (18) months, shall be turned over to the other as compensation for the work, personal time and effort each of them contributed in obtaining and servicing such clients and contributing same to the firm. Upon written request, each party shall render during such eighteen (18) month period consultative services at his convenience in connection with such clients. SILVERBERG acknowledges that the provisions hereof are a material inducement to SCHWARTZ to enter into this agreement and to contribute to the firm his unbilled fees for work done or time heretofore spent and the other itmes enumerated in this agreement, and that the payment provided for herein if any of SCHWARTZ's clients are thereafter represented by SILVERBERG, is, among other things, in payment for goodwill and for the value of the uncompleted and unbilled matters and the other items turned over to the firm, as aforesaid. All attorney client relationships between each of the parties and his clients existing at the time hereof or which had previously

existed up to the date hereof shall continue of course, subject to the rights and wishes of said clients. In all future employments of the firm by each such client, that attorney-client relationship shall continue. That party shall at all times continue to be the one of the firm to serve that client. He shall service or supervise the services rendered by others and shall continue to keep the client advised, generally, in connection with all such employments. After consulting with the other party, when circumstances justify, he shall determine fully the terms and conditions of all employments of the firm by that client." This provision violates the proscriptions contained in the Code of Professional Responsibility, specifically Disciplinary Rules 2-107 and 2-108. The agreement amounts to a covenant restricting the practice of a lawyer which is inconsistent with the professional status of attorneys (see American Bar Association Opns on Professional Ethics, No. 300 [1961]). Moreover, it is a division of legal fees without regard to services actually rendered. Such agreements are void and against public policy (see *Moffat v Cresap,* 33 AD2d 54, affd 29 NY2d 856; *Orenstein v Albert,* 39 Misc 2d 1093, affd 20 AD2d 720; *Clark v Robinson,* 252 App Div 857). As lawyers play a vital role in society (see Code of Professional Responsibility, Preamble) public policy requires that violations of the rules of professional conduct not be subject to negotiation and arbitration, but that such violations come before the scrutiny of the courts. Lawyers should not traffic in clients (see American Bar Association Opns on Professional Ethics, No. 300 [1961]), nor make payments by one partner to another in a law firm depend on a percentage of legal fees to be earned after dissolution of the partnership without any professional responsibility for handling of the cases (cf. *Orenstein v Albert, supra; Matter of Haber,* 27 AD2d 576, affd 23 NY2d 763, cert den 394 US 975). Accordingly, paragraph "sixth" of the partnership agreement is void and unenforceable and cannot be the subject of arbitration. Respondent's request for relief in his demand for arbitration, insofar as he seeks to enjoin petitioner from further solicitation of his clients, is not the type of relief that the arbitrator can award. The injunctive relief would interfere with petitioner's relations with his clients. Respondent cannot restrict petitioner's practice by precluding him from representing former clients of the partnership that were originally obtained by respondent (cf. Code of Professional Responsibility, DR 2-108; NY State Bar Assn. Opns of the Committee on Professional Ethics, 129). Finally, public policy also requires that the arbitrator be precluded from awarding punitive damages as requested in the respondent's demand (see *Matter of Sprinzen [Nomberg],* 46 NY2d 623). It is well settled that an agreement cannot confer upon an arbitrator the power to award punitive damages (see *Garrity v Lyle Stuart, Inc.,* 40 NY2d 354). "Punitive damages is a sanction reserved to the State, a public policy of such magnitude as to call for judicial intrusion to prevent its contravention" *(Garrity v Lyle Stuart, Inc., supra,* p 356). Therefore, we conclude that petitioner's request for a stay of arbitration must be granted as limited herein, on the ground of public policy. Hopkins, J. P., Lazer, Gibbons and Rabin, JJ., concur.