488 A.2d 504

**Jacob B. BERKSON**

v.

**Susan E. BERRYMAN.**

**No. 411, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

March 6, 1985.

Certiorari Denied June 10, 1985.

80

Nelson M. Oneglia, Greenbelt (Horowitz, Oneglia, Goldstein, Foran & Parker, P.A., Greenbelt, on brief), for appellant.

Susan Carol Elgin, Hagerstown (Snyder & Elgin, P.A. and Irving M. Einbinder, Hagerstown, on brief), for appellee.

Argued before BISHOP, ALPERT and KARWACKI, JJ.

KARWACKI, Judge.

This appeal arises out of circumstances surrounding the demise of a short-lived partnership formed by two lawyers engaged in the practice of law. The matter originated with a Bill of Complaint for an Accounting and Other Related Relief filed on June 1, 1981 in the Circuit Court for Washington County (Moylan, J.) by the appellee, Susan Elgin Berryman, now Susan Carol Elgin. The appellee sought to establish the existence of a partnership between herself and the appellant, Jacob B. Berkson, and requested an accounting of partnership profits allegedly withheld from the appellee by the appellant.

The trial on the issues was bifurcated by the trial court upon the appellant's motion. In his May 25, 1982 order granting that motion the trial judge stated that the case would proceed to trial solely on the issue of the existence of a partnership, and if one was found to exist between the

parties, additional proceedings would be had to determine the nature and extent of any accounting.

On April 18, 1983, the date scheduled for the first phase of the trial, the appellant, without prior notice to the court or to the appellee, stipulated to the existence of a partnership between the parties. Counsel for the appellant then requested a continuance of the trial stating as grounds for his request that he was unprepared to go forward on the issue of the terms of the partnership. This request was denied and trial proceeded on the issue of the terms of the partnership. At the close of this two day hearing, the court issued a memorandum opinion, including considerable findings of facts which are summarized below.

On December 4, 1979, the day of her admission to the Maryland Bar, the appellee became an associate of the appellant in the practice of law. Before that time, the appellant was a sole practitioner, and the appellee was employed by him as a law clerk. On June 1, 1980 the parties formed a partnership. Their oral agreement to do so provided that the net profits from their practice were to be divided two-thirds to the appellant and one-third to the appellee. The parties were to contribute toward losses sustained by the partnership according to their respective shares in the profits and were to receive equal draws against anticipated profits of $100 per week. The formation of the partnership was announced in the newspaper that June, and in the telephone directory the following August. The firm applied for malpractice insurance in the name of the partnership. The stationery was changed and the manner in which the telephone was answered was amended to reflect the new partnership name, Berkson and Berryman.

In addition to payment of the normal operating expenses of the firm, the parties agreed to the payment of certain consultation and legal fees to other attorneys who had participated in the representation of clients. The parties also agreed to make payments of $100 per month on the

principal and the quarterly interest payments due on a loan obligation incurred by the appellant before the partnership was formed. In mid-June, the partners made a loan to the partnership in the amount of $1,000, of which the appellant contributed two-thirds and the appellee one-third. This loan was repaid to the partners shortly thereafter.

It is undisputed that under their partnership agreement all open files and pending cases of both parties were to become partnership cases subject to the agreed upon division of profits and losses. The parties did not anticipate or discuss dissolution of the partnership, and there were no express provisions agreed upon pertaining to their respective rights and obligations upon dissolution.

Having determined that a partnership existed and the terms thereof the lower court scheduled the second phase of the trial dealing with the accounting for July 25, 1983. At that hearing the court determined that the partnership was dissolved on November 2, 1980 when the appellant denied the appellee access to their offices and files. This abrupt move by the appellant was an apparent response to events which occurred in late October. Several days before the dissolution the partners met with Dr. David Berryman, who was at that time married to the appellee. Dr. Berryman, a physician, demanded a contingent fee amounting to one-sixth of the legal fees recovered in one of the firm's cases entitled *Cool v. Stapleford* (The *Cool* case).[1] Apparently Dr. Berryman had acted as a medical consultant to the partners in that case. Earlier, Dr. Berryman had made a similar written demand of the appellant in a letter dated October 25, 1980. The trial court specifically found that the

---

1. That case arose from a claim of medical malpractice brought by Terry and Lois Cool and their infant son, Matthew, against the obstetricians and the hospital involved in Matthew's birth. Matthew, we surmise from the testimony, is severely handicapped. The claimants settled their claim with the doctors in an amount totaling $906,-981. The case against the hospital went to trial before the Health Claims Arbitration Board. The Board found against the claimants and that decision is currently on appeal.

appellee did not join in her husband's demand, and no agreement was reached by the partners and Dr. Berryman as a result of their meeting. Dr. Berryman's claim is the subject of a pending lawsuit. About the same time, the appellee requested that her share in the partnership profits and losses be increased from a one-third interest to a one-half interest. The parties did not reach an agreement regarding this request.

The lower court at the hearing of July 25, 1983 was persuaded by evidence offered by the appellee that following the dissolution she at all times was willing and able to participate in the winding up of the partnership's cases, but that she was prevented by the appellant from doing so. Rather, after November 2, 1980, the appellant resumed his sole practice and in addition proceeded to conclude the cases which were those of his partnership with the appellee. The evidence showed that the winding up of the partnership cases produced legal fees of $359,061.00. $302,327.00 of that amount was received in the *Cool* case mentioned above. In connection with the *Cool* case, the appellant subsequent to November 2, 1980, without any consultation with the appellee, employed Max R. Israelson, Esq., of the Baltimore Bar to assist him in its conclusion. The appellant paid Mr. Israelson $60,465.00 from the fee received in the *Cool* case without the consent of the appellee.

Upon making the above outlined factual findings, the trial judge determined that the appellee was entitled to $115,756.38 (her one-third share of the $359,061.00 fees earned in the winding up of the partnership cases, or $119,687.00, less certain credits in the amount of $3,930.62 due to the appellant). He specifically rejected the appellant's claim of credits for expenses incurred in winding up the partnership cases and for the fee he paid to Mr. Israelson for the latter's assistance in concluding the *Cool* case. From the order implementing this determination, the appellant has appealed, raising the following contentions:

 I. The trial court abused its discretion in denying the appellant's motion for a continuance;

II. The appellee is estopped from claiming any share of the profits earned after dissolution of the partnership;

III. The trial court erred in failing to deduct certain expenses and liabilities from the total amount of fees earned in winding up partnership cases; and,

IV. The court erred in failing to allow the appellant any credit for his services rendered in winding up the partnership affairs.

## I.

■ Initially, the appellant contends that the trial judge abused his discretion in denying a motion for the continuance of the first phase of the bifurcated trial. The appellant recognizes that the grant or denial of a continuance lies within the discretion of the trial judge and that, unless arbitrary, his action will not be overturned on appeal. *Greenstein v. Meister,* 279 Md. 275, 368 A.2d 451 (1977); *Dart Drug Corp. v. Hechinger,* 272 Md. 15, 320 A.2d 266 (1974); *Butkus v. McClendon,* 259 Md. 170, 269 A.2d 427 (1970); *Cruis Along Boats v. Langley,* 255 Md. 139, 257 A.2d 184 (1969). The appellant argues, however, that the court abused its discretion because it acted in contravention of the order granting the appellant's motion to bifurcate the trial. The order reads in pertinent part, "it is this 25th day of May, 1982, by the Circuit Court for Washington County, ORDERED that the Motion for Bifurcation of Trial is granted and the case shall proceed to trial solely on the issue of the existence of a partnership." The appellant argues that he had properly inferred from the language of the May 25, 1982 order that *only* the issue of the partnership's existence and not the question of the terms of the partnership would be litigated at the April 18, 1983 trial. The appellant claims that the court's decision not to grant his request for a continuance resulted in "surprise" to him, thereby preventing him from having the opportunity to prepare that issue for litigation adequately. We disagree, and for the several reasons discussed below conclude that

the trial judge's refusal to grant the continuance was a proper exercise of his discretion.

First, it is evident from a review of the pleadings filed in this case and the extent of discovery sought and received by both parties during the two years prior to the first trial that the parties had prepared before the first phase of the trial to litigate not only the partnership's existence but the terms of it as well. In fact, it is difficult to conceive how the existence of a partnership could fairly be determined without some evidence adduced at trial as to its nature and terms. As the trial judge stated in his response to counsel's argument in support of the motion to continue:

> The Court, whether it be skillful or unskillful, divided this into two basic issues, whether or not there was a partnership between the parties to this litigation; and, secondly, information from the files, books and records which would be relevant on the legal issue of an accounting for partnership assets and profits and losses; and the order went on to say that the Plaintiff must first make a prima facie showing of a partnership before any information relating to the accounting should be discoverable.

We conclude that this interpretation reasonably effectuates the goals of the bifurcation; i.e., to postpone the time and expense of discovery on the accounting question until after the existence of the partnership had been first determined.

Secondly, we find no prejudice to the appellant resulting from the court's refusal to grant the continuance. Any evidence that the appellant's counsel was unable to elicit regarding the terms of the partnership at the first phase of the trial, he could certainly have put forth at the hearing on the issues of accounting held on July 25, 1983.

Finally, and most importantly, nothing in the record before us indicates what evidence, if any, the appellant sought to produce at a later date to contradict the ultimate findings of fact by the lower court on what the terms of the partnership agreement between the parties were. Without

such a proffer, the motion bordered on the frivolous. Md. Rule 527 (New Md.Rule 2–508).

## II.

The appellant next asserts that the appellee is estopped from claiming any share of the profits earned after dissolution of the partnership. He specifically argues that the appellee breached her fiduciary duty of good faith and loyalty to the partnership. *Cf. Herring v. Offutt,* 266 Md. 593, 597, 295 A.2d 876 (1972). The appellate courts of Maryland have long applied the definition of equitable estoppel found in 3 Pomeroy's *Equity Jurisprudence* § 804 (5th ed.):

> Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, or contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy.

*Bayshore Industries, Inc., v. Ziats,* 232 Md. 167, 192 A.2d 487 (1963); *Crane Co. v. Onley,* 194 Md. 43, 50, 69 A.2d 903 (1949); *Brenner v. Plitt,* 182 Md. 348, 364, 34 A.2d 853 (1943); *Resnick v. Kaplan,* 49 Md.App. 499, 511, 434 A.2d 582 (1982).

The appellant advances two incidents where the appellee allegedly breached her fiduciary duty. First, the appellant cites the claim by the appellee's then husband, Dr. Berryman, for a contingent fee in the *Cool* case. The appellant asserts that because the appellee was present during the meeting between Dr. Berryman and the appellant, and stood silently by while the two discussed Dr. Berryman's fee arrangements, the appellee placed herself in a direct conflict of interest with the partnership. We believe the appellant overlooks the fact that Dr. Berryman's claim was made against a partnership asset of both the appellant and

the appellee. For that reason the appellee certainly was an interested, if not necessary, party to any discussions with the claimant. The evidence fully supports the trial court's finding that the appellee in no way placed herself in any conflict of interest with regard to the Berryman claim, and we are satisfied that the court's finding to that effect was not clearly erroneous. Maryland Rule 1086.

 Secondly, the appellant reasons that the appellee's decision to act as attorney for Dr. Berryman and the appellant's wife in separate suits against the appellant placed her in an adversarial position vis-a-vis the appellant and the interests of the partnership. We note, as did the trial court, that these incidents took place *after* the dissolution of the partnership had occurred. They were therefore irrelevant to the issue of who caused the dissolution. Applying the scope of review by this Court of the trial court's findings of fact, as set forth in Maryland Rule 1086, we hold that the trial court was not clearly erroneous in finding that there was no breach of fiduciary duty by the appellee so as to allow the appellant to benefit from the doctrine of equitable estoppel.

### III.

The appellant challenges the trial court's decision not to deduct certain expenses and liabilities from the fees earned in winding up the partnership cases. Specifically, the appellant argues that the fee paid by the appellant to Max R. Israelson, Esq., for services he rendered as a consulting attorney in the *Cool* case should be deducted as an expense incurred in the handling of that case. Additionally, the appellant claims a deduction of 46.3% from the total income earned from the partnership cases as overhead expenses. We will discuss each of those arguments separately.

A. The Legal Fees Paid to Outside Counsel

The appellant cites two sections of the Uniform Partnership Act, codified in Title 9 of the Corporations and Associations Article in support of his assertion that the fee paid to

Mr. Israelson is an expense which should properly be deducted before the profits are distributed between the appellant and the appellee. Those sections provide in pertinent part:

> General Effect of Dissolution on Authority of Partner.
>
> Except so far as may be necessary to wind up partnership affairs or to complete transactions begun but not then finished, dissolution terminates all authority of any partner to act for the partnership...

Md.Code (1975), § 9–604 of the Corporations and Associations Article.

> Power of Partner to Bind Partnership to Third Persons after Dissolution.
>
> (a) After dissolution, a partner can bind the partnership
>
> . . .
>
> (1) By any act appropriate for winding up partnership affairs or completing transactions unfinished at dissolution...

Md.Code (1975), § 9–606 of the Corporations and Associations Article.

At trial the appellant explained his reason for seeking the assistance of Mr. Israelson in bringing the *Cool* case to settlement:

BY MR. BROWN [counsel for the appellant]:

Q. Mr. Berkson, there later came a time in the Cool case in which you retained the services of Max Israelson, an attorney, another member of the Bar. Would you please explain why you chose to make that decision?

A. At that time I felt that the client would be better protected if there was back-up by someone with a well recognized name, basically in order to try to hammer out a settlement. My clients were very...

MR. EINBINDER [counsel for the appellee]: Objection as to what his clients were, Your Honor.

THE COURT: Well your objection will be overruled.

A. The clients had been waiting for more than five years for some kind of compensation. They had this totally

handicapped child on their hands. They were at their wits end, and I felt that I had been unable to obtain a settlement and that Max Israelson, whose name has been known for many, many years in Maryland as a top personal injury lawyer, would be able to get a settlement out of the defendants, and that was the principal reason for retaining him.

It is evident from this testimony that by hiring Mr. Israelson, the appellant sought to accomplish in the *Cool* case that which since 1976 he had been unable to do; i.e., obtain a substantial recovery for his clients. We note that under Maryland's Code of Professional Responsibility generally, and Canon 6 specifically, attorneys in this State are bound to represent their clients in a competent manner. Indeed, Disciplinary Rule 6–101(A) mandates that a lawyer shall not:

(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.

After considering the appellant's testimony regarding the hiring of Mr. Israelson (a well respected trial attorney in this State), viewed in light of the appellant's previous lack of success in bringing this crucial partnership case to settlement, we conclude that the appellant's action was necessary for the protection of his clients' best interest and was, therefore, mandated in the exercise of his duty to represent those clients in a competent manner. It logically follows, then, that the hiring of Mr. Israelson was an "act appropriate for winding up partnership affairs or completing transactions unfinished at dissolution." Section 9–606 of the Corporations and Associations Article, *supra.* It is not dispositive of the appellant's claim that he did not consult with the appellee before engaging the services of Mr. Israelson, as the appellant retained the authority as a partner to bind the partnership in this manner. Sections 9–604 and 9–606, *supra.* For these reasons the lower court was clearly erroneous in holding that the appellee was not responsible for paying her proportionate share of this part-

nership expense. We thus modify the order appealed from and enter a new judgment for the appellee which reflects a credit to the appellant in the amount of one-third of the $60,465.00 fee paid to Mr. Israelson for his services, or $20,155.00.

## B. Overhead and Expenses

After the appellant forced the dissolution of the partnership on November 2, 1980, he resumed a sole practice of law which he conducted in tandem with winding up the cases which were subject to his partnership agreement with the appellee. That winding up process produced total fees from the partnership cases of $359,061.00. $302,327.00 of that amount represented one fee, the one received in the *Cool* case. In addition to payment of the fee in the *Cool* case, the clients of the partnership reimbursed the firm for $14,971.30 in expenses incurred in that litigation. Over and above that recovery the appellant claimed a credit against the appellee's share of partnership profit for overhead and expenses in the amount of 46.3% of the fees earned from partnership cases during the winding up period. That percentage figure was derived from a comparison of the law firm's income and expenses over a seven year period.

At trial the appellant called as an expert witness a certified public accountant who opined that the partnership's overhead and expenses amounted to 46.3% of the income produced by the partnership. This percentage figure reflected the firm's average overhead arrived at by a comparison of the firm's income and expenses during a seven year period. This seven year period included the time from 1976 to June, 1980 when the appellant was engaged in sole practice, as well as the five month partnership period (June, 1980 to November, 1980) and, finally, an 18 month winding up period during which the appellant resumed his sole practice. The certified public accountant testified that in computing the percentage he used income and expense figures obtained from two sources: the appellant's tax returns for the taxable years July 1, 1976 through December, 1982, and a financial statement which reflected the

firm's statistics from January 1, 1983 through June 30, 1983. Mr. Parks admitted under cross-examination that he did not conduct an audit of the law firm's books, and that he in part at least based his calculations upon figures submitted to him by the appellant himself or his secretary. The appellee was denied an opportunity to review personally or have an accountant review on her behalf the books and records during the winding up period, nor was the appellee afforded an opportunity to pass upon the legitimacy of the items included by the appellant as expense items.

 While Mr. Parks' worksheet and report were admitted into evidence, the law firm's books for the period of sole proprietorship and the appellant's tax returns did not become part of the record. In that worksheet and report no allocation was made between the expenses attributable to the winding up of partnership cases and those attributable to the continuing practice of law by the appellant as a sole practitioner. Nor did the appellant attempt to offer into evidence any specific expenses allocable to the recovery of any of the fees in the partnership cases which were being concluded. Rather, the appellant elected to discharge his burden of proof of these expenses through the expert testimony of Mr. Parks. Upon review of the record, we conclude that the trial court's findings of fact with respect to the evidence adduced at trial on the issue of overhead and expenses were not clearly erroneous.

We next look to the trial court's judgment derived from those findings of fact. The lower court determined that, viewing the facts in light of the appellant's duty of strict accountability to the appellee as his partner, the appellant failed to meet his burden of proof in regard to expenses attributable to the winding up of partnership cases and denied the appellant's claim for 46.3% of the fees earned. This Court in *Wenger v. Wenger,* 42 Md.App. 596, 402 A.2d 94 (1979) reiterated the rule that, "[w]hen an appellate court, absent clear error, defers to a trial court, it defers not only to the fact-finding but to any legitimate verdict, disposition or judgment emanating from that fact-finding."

*Id.* at 602, 402 A.2d 94. Applying this standard we hold that the trial court was not clearly erroneous in its refusal to give the appellant a credit for overhead and expenses.

## IV.

█ Lastly, the appellant challenges the trial court's denial of a credit for the appellant's services in winding up the partnership affairs. In the case of *Resnick v. Kaplan, supra,* the late Judge Moore speaking for this Court said:

The Uniform Act conferred no right upon either side to compensation for services rendered in this winding up process, cf. § 9–401(6) and, in the absence of any provision in the partnership document, it was correctly held that the aggregate of the fees collected should be allocated according to the percentages specified in the agreement for the distribution of profits and losses.

Despite this clear exposition of the law, the appellant nonetheless seeks to be compensated for the work he did on partnership cases in the months following dissolution of the partnership. The appellant asserts that the rule of law as set forth in *Resnick* is inapplicable to the facts of the instant case.

*Resnick* involved the dissolution of a law partnership that had existed for approximately four years. When Mr. Resnick departed from the law firm, he continued to represent clients of the former firm in approximately 150 cases while his former partners continued to represent clients in an additional 600 cases. The appellant seeks to distinguish *Resnick* from the case *sub judice* by arguing that in this case the majority of clients were the appellant's *before* the partnership was formed, and that the appellant did most of the work on the cases before, during and after the partnership. Therefore, the appellant argues, the appellee should not be permitted to benefit from his labor and experience merely because she happened to be in a partnership for five months. We are unpersuaded that these facts are such as to require us to ignore the rule of law which disallows special remuneration for partners who render services dur-

ing the winding up period absent any provision in the partnership agreement to the contrary. The lower court determined from ample evidence that the parties understood that all open files and pending cases of both partners as of June 1, 1980 were to become partnership cases subject to the agreed upon division of profits and losses. As the trial court stated:

> The partnership was short-lived, but no matter how much either or both regard the experience, the parties are mutually bound to the contractual and legal rights and obligations which arose by reason of the formation of the partnership. They are likewise bound by the mutual rights and obligations which exist either by contract or partnership law upon dissolution and in connection with the winding up of the partnership.

We will not overturn the trial court's decision refusing to award the appellant compensation for services rendered during the winding up of the partnership.

ORDER OF THE CIRCUIT COURT FOR WASH-INGTON COUNTY MODIFIED BY REDUCTION OF JUDGMENT FOR APPELLEE FROM $115,756.38 TO $95,-601.38 AND AS MODIFIED, AFFIRMED; FOUR–FIFTHS OF THE COSTS TO BE PAID BY THE APPELLANT, ONE–FIFTH TO BE PAID BY THE APPELLEE.