■ HENDLER & MURRAY et al., Appellants, v ARTHUR LAMBERT, Respondent. RICHARD V. GUARDINO, Nonparty Respondent.—In an arbitration proceeding, the petitioners Hendler & Murray, a partnership, Jerome Murray, and Hendler & Murray, P. C. appeal from a judgment of the Supreme Court, Nassau County (Robbins, J.), entered March 24, 1988, which, *inter alia,* confirmed the arbitration.

Ordered that the judgment is affirmed, with one bill of costs to the respondents filing separate briefs, payable by the appellants.

On November 1, 1976, Hendler, Murray and Lambert entered into a partnership agreement creating the partnership known as "Hendler & Murray", effective January 1, 1977, for the general practice of law. Paragraph 6 of the agreement provided that the net profits and losses would be divided as follows: Murray 52%, Hendler 26%, and Lambert 22%. Paragraph 13 of the agreement provided that the withdrawal of a partner would have no effect on the continuation of the partnership business, and that a notice of withdrawal was to be served upon the firm three months prior to its effective date. The partnership could thereafter be dissolved by serving on the withdrawing partner a notice of dissolution within 45 days of receipt of his notice of withdrawal. It was agreed in provision 14 (b) that, should Lambert withdraw after he had been with the firm for five years, he would be entitled to share in the net earnings of the partnership for 60 months at the rate of 17.6% in the first year, and at diminishing rates for the remaining four years. The contract also contained a broad arbitration provision. An amendment to this agreement on March 7, 1980, declared Lambert's share of the firm's capital assets to be $5,500, and confirmed the five-year payout to a withdrawing partner.

Hendler retired on April 1, 1981, and began receiving termination payments pursuant to the agreement. Subsequent attempts by Murray to redraft the partnership agreement were unsatisfactory to Lambert, and as no compromise seemed possible, Murray proposed to draft a withdrawal agreement in

which he offered to pay Lambert termination sums as if he had remained with the firm for the full five years. This agreement was formalized in two letters dated October 21, 1981, cosigned by both men. Although Murray claimed to want to continue the partnership, by a certificate of incorporation dated October 28, 1981, he formed a professional corporation named "Hendler & Murray, P.C.". Murray got Lambert to agree in writing that Lambert would pay the taxes on all sums he received from the firm, but Lambert never responded to Murray's November 4, 1981, request that the net income from which his payments would be calculated not include the salaries of "new partners".

Having been unsuccessful in persuading another attorney in the firm to sign a new partnership agreement, on December 18, 1981, Murray summoned a meeting of some 5 or 6 of the partnership's associates to offer them new employment and shareholder status in the professional corporation effective January 1, 1982. The shareholders adopted a resolution to continue paying Lambert and Hendler their termination percentages under the partnership agreement, although they disclaimed any obligation to do so, and declared that this resolution could be revoked at any time by a vote of the stockholders.

By letter dated December 21, 1981, Murray wrote to Lambert announcing the dissolution of the partnership and the formation of the professional corporation as of January 1, 1982. The letter declared Murray's intention to "wind up the partnership affairs and account to you * * * in the manner and at the times provided" in the partnership agreement. He further advised Lambert that he and his shareholders had agreed to pay Lambert "the same percentage of the net profits of the professional corporation as you would have received pursuant to our written partnership agreement and modification", subject to the professional corporation's "rights of later modification or revocation".

Murray sent Lambert several checks, subject to a final year-end accounting or on the basis of "tentative computation" during 1982 and 1983, all of which Lambert cashed. Lambert meanwhile was attempting to start his own practice, having sublet space from a law firm in Manhattan. By letter dated June 30, 1983, Murray proposed that Lambert accept $20,463 in full satisfaction of all his outstanding claims against the firm's profits. When Lambert failed to respond to this offer, Murray revoked it and denied all further responsibility to Lambert in a letter dated August 22, 1983. By letter dated

October 5, 1983, Lambert demanded arbitration pursuant to paragraph 20 of the partnership agreement. In letters opposing Lambert's demand for arbitration, Murray and the partnership claimed, *inter alia,* as affirmative defenses that Lambert had improperly solicited the partnership's clients and employees .

On February 1, 1988, 2 of the 3 arbitrators awarded Lambert $367,252 from the petitioners, and their award was confirmed by the court. The court further directed the parties to equally divide payment of the fee to the court-appointed arbitrator, which was set at $29,680, the sum he had requested.

On this appeal, the petitioners first allege that the award to Lambert violates public policy enunciated in Code of Professional Responsibility DR 2-107, since the funds would be paid out of new business and so constitute an improper fee-splitting arrangement with an attorney who has done no work on nor assumed any responsibility for the new business. The petitioners assert that paragraph 14 (b) of the 1976 partnership agreement is therefore void and unenforceable.

The petitioners' claim is without merit. Code of Professional Responsibility DR 2-107 (B) makes clear that the prohibition against fee splitting among unaffiliated lawyers does not apply to payments to a former partner or associate pursuant to a separation or retirement agreement. Moreover, a contract should be construed, wherever possible, in favor of its legality *(Shedlinsky v Budweiser Brewing Co.,* 163 NY 437), so that "the usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appears that they contravene public right or the public welfare" *(Baltimore & Ohio Ry. Co. v Voigt,* 176 US 498, 505; *Miller v Continental Ins. Co.,* 40 NY2d 675). Courts have been even stricter in refusing to vacate an arbitration agreement or award unless it offends public policy "on its face" *(Matter of Sprinzen [Nomberg],* 46 NY2d 623). Neither the partnership agreement nor the arbitration award in the instant case violates public policy.

The petitioners next contend that the award was an irrational rewriting of the parties' contract, since in determining the net earnings of the professional corporation the arbitrators added back the salaries and other benefits of the firm's principal shareholders. The petitioners also argue that the partnership dissolved as a matter of law when Lambert left

Murray the sole surviving partner, and that the arbitrators again rewrote the agreement in finding that Murray could be in partnership with himself. We disagree.

In *Matter of Silverman (Benmor Coats)* (61 NY2d 299, 312) the court pointed out that there are few limitations on the powers of a consensual arbitrator, whose award will not be disturbed unless, as already discussed, it is violative of a strong public policy, or unless it is either "totally irrational" or "exceeds a specifically enumerated limitation on his power" contained in the arbitration agreement. In the instant case, a very broad arbitration clause put no restrictions whatever on the authority of the arbitrators. It was therefore not at all irrational, and it was well within the arbitrators' authority, to find that the partnership had never been properly dissolved; that the five principal shareholders of the corporation should be treated exactly like partners, so that their salaries should be added onto the firm's earnings in determining net profits *(see, Lewis v Vladeck, Elias, Vladeck, Zimny & Engelhard,* 57 NY2d 975), and that there was no accord and satisfaction *(Fuller Co. v Gustafson Co.,* 55 AD2d 872).

We have examined the petitioners' remaining contentions and find them to be without merit. Mangano, J. P., Brown, Kunzeman and Kooper, JJ., concur.