**Timothy F. KELLY, Appellant,**

v.

**J.B. SMITH, Robert F. Parker, Randall J. Nye, Andrew J. Fetsch and Daniel W. Glavin, Appellees.**

No. 37A04–9105–CV–137.

Court of Appeals of Indiana, Fourth District.

March 26, 1992.

Rehearing Denied May 11, 1992.

---

**1308**

Daniel A. Medrea, Karen L. Hughes, Lucas, Holcomb & Medrea, Merrillville, for appellant.

Fred M. Cuppy, Kathryn D. Schmidt, Burke, Murphy, Costanza & Cuppy, Merrillville, for appellees.

CONOVER, Judge.

Plaintiff/Counter–Defendant–Appellant Timothy Kelly appeals the grant of partial summary judgment in favor of Defendants/Counter–Claimants–Appellees J.B. Smith, Robert Parker, Randall J. Nye, Andrew J. Fetsch, and Daniel Glavin (Firm).

We affirm.

Kelly presents three restated issues for our review:

 1. whether the trial court erred as a matter of law in its entry of partial summary judgment for the Firm, the counter-claimants;

 2. whether summary judgment should be entered for Kelly, the counter-defendant; and

 3. whether the trial court erroneously construed the Articles of Partnership.

Firm presents one issue in its cross-appeal:

 1. whether the trial court erred in not granting summary judgment on the issue of Kelly's distribution percentage at the time of his withdrawal.

This action began when Elizabeth D. Kelly and Timothy F. Kelly filed a verified complaint for preliminary injunction with the Lake Superior Court asking the court to restrain the Firm from using the "Kelly" name in their law firm title. The Firm had continued to practice under the name of Beckman, Kelly and Smith after the termination of their partnership with Kelly on March 31, 1989.

The Firm filed a counterclaim. In count I, it asserted Kelly was liable to the Firm for all fees generated by legal matters which were part of the business of the Firm as of the date of his withdrawal, less the applicable proportion of the Firm income to which Kelly was entitled. Both sides filed motions for partial summary judgment on this count. The trial court rendered its partial summary judgment on count I in favor of the Firm on December 7, 1990.

Kelly filed a motion to correct errors, which the trial court denied. This appeal followed. More facts will be added as necessary.

■ Summary judgment is only proper where there is no genuine issue as to any material fact. *City of Evansville v. Moore* (1990), Ind., 563 N.E.2d 113, 114. In reviewing a trial court's entry of summary judgment, the reviewing court is bound by the same standards as the trial court; we must consider all the pleadings, affidavits, depositions, admissions, answers to interrogatories, and testimony in a light most favorable to the nonmoving party. *Scott v. Bodor, Inc.* (1991), Ind.App., 571 N.E.2d 313, 318; *Reed v. Dillon* (1991), Ind.App., 566 N.E.2d 585, 588. If any doubt as to the existence of a factual issue is present, the same should be resolved against the moving party. Ind.Trial Rule 56(C); *City of Evansville*, 563 N.E.2d at 114. Even if the facts are undisputed, summary judgment is inappropriate when evidence before the court reveals a good faith dispute as to the inferences to be drawn from such facts. *Lawlis v. Kightlinger & Gray* (1990), Ind. App., 562 N.E.2d 435, 439, *reh. denied, trans. denied.*

■ However, irrelevant or unnecessary factual disputes will not be considered. *Id.* A factual issue is "genuine" only when it cannot be foreclosed by reference to undisputed facts and requires a trier of fact to resolve the opposing parties' differing versions. *Id.*

Kelly contends the trial court should have considered only his affidavit denying a breach of fiduciary duty and not have interpreted the partnership agreement in considering the Firm's summary judgment motion. He points out J.B. Smith's affidavit, attached to the Firm's motion for summary judgment, does not address the issue of fiduciary duty but instead recites the Firm's calculation of the amount to which Kelly is entitled under the partnership agreement. This he contends forms an inadequate basis for resolving liability under count I.

■ Affidavits are to be liberally construed in favor of the non-movant. *Woodward Ins., Inc. v. White* (1982), Ind., 437 N.E.2d 59, 62. However, pursuant to T.R. 56(C), in effect at the time of the action, judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, admissions, and affidavits together with any testimony show no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law.

■ While Kelly's denial in his affidavit must be viewed as true since it is uncontradicted, the trial court properly examined the pleadings, deposition, interrogatory answers, and admissions as well. *Frink v. State* (1991), Ind., 568 N.E.2d 535, 536; T.R. 56(C) (1990). The partnership agreement was an exhibit in the Firm's counterclaim. Moreso, the resolution of how the partnership agreement is to be interpreted is implicit in count I of the counterclaim. The trial court need not limit itself to a review of the Smith and Kelly affidavits in ascertaining the Firm's right to recovery as Kelly suggests.

■ Furthermore, Kelly has cited no authority for the proposition the Firm is prevented from recovering on count I of the counterclaim because it contained an allegation of breach of fiduciary duty or for the proposition that proof of such a claim is an essential element of an action for an accounting under principles of partnership. In fact, other jurisdictions in addressing this precise question have held a fiduciary duty exists upon the termination of a partnership absent an agreement to the contrary.

In *Resnick v. Kaplan* (1981), 49 Md.App. 499, 434 A.2d 582, 587, the Maryland court explicitly rejected the proposition a firm needs to prove a breach of fiduciary duty before it can recover fees. The court held whether there was a violation of the partnership agreement "was not relevant or material to the rights of both sides to an accounting." 434 A.2d at 588. The Maryland court also held that whether there was a breach of a fiduciary duty is relevant to the issue of other damages but not the

right of partners to an accounting and a division of assets on winding up. *Berkson v. Berryman* (1985), 62 Md.App. 79, 488 A.2d 504. We agree.

Therefore, the trial court did not err in construing the partnership agreement while considering the motion for partial summary judgment. The trial court correctly found no issue of material fact existed, and as a matter of law the Firm was entitled to partial summary judgment.

Kelly urges this court to enter judgment for him on count I of the counterclaim under his interpretation of Ind.Appellate Rule 15(N). He presents the same arguments discussed above to support his contention.

■ This court has the inherent power in the review of a summary judgment to reverse the grant of a summary judgment for one party and enter summary judgment for the appropriate party. *Davidson v. Cincinnati Ins. Co.* (1991), Ind.App., 572 N.E.2d 502, 508. For reasons set out below, we find no trial court error. Therefore, we will not grant summary judgment for Kelly.[1]

Kelly contends the trial court erred in construing the partnership agreement to include a duty of the withdrawing partner to wind-up unfinished business. He points to two provisions of the agreement which he suggests control all the Firm's and the withdrawing partner's duties in this regard.

Paragraph 6 of the partnership agreement, titled Termination and Buy-out, in pertinent part, states:

This agreement and this partnership may be terminated by any partner beginning One Hundred Twenty (120) days after notice in writing or intention so to do is given to the other partners. In the event of the death, retirement, or withdrawal of a partner, such partner shall be paid in accordance herewith, and as computed hereunder, his net capital account, his

vested interest in receivables, and his vested interest in contingent fee cases.

. . . .

Paragraph 15, titled Winding Up, reads:

Upon the termination of the partnership for any cause, a full account shall be taken and settled of all the moneys, debts and effects belonging to or due the firm and of all debts and liabilities of the firm.

The Indiana Uniform Partnership Act (UPA) encourages partnerships to enter into contracts to control the rights and duties of the various partners to each other. IND.CODE 23–4–1–18. If there is no contract, the UPA controls. IC 23–4–1–1 through 23–4–3–8. It is undisputed the parties entered into a partnership agreement which provides the UPA will govern in areas the agreement does not cover.

■ The trial court correctly found the partnership agreement has no specific provision which describes the remaining parties' interest in cases removed from the firm after partner withdrawal. Accordingly, the UPA provides

Every partner must account to the partnership for any benefit and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership.

IC 23–4–1–21.

Dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business.

IC 23–4–1–29. Thus, the withdrawing partner remains as a trustee when the partnership is dissolved and terminated. *Boushehry v. Ishak* (1990), Ind.App., 550 N.E.2d

---

1. Kelly urges the trial court's findings of fact were not based on affidavits, admissions or properly designated sworn testimony. However, we find no error in this regard. After reviewing the material before the court, Kelly's

784, 788 (modified on rehearing on other grounds, 560 N.E.2d 116).[2]

■ In *Boushehry*, Indiana joined the long line of jurisdictions which hold the fiduciary duties of the partners remain intact during the winding up process with respect to partnership business pending at the time of dissolution. *Rosenfeld, Meyer & Susman v. Cohen* (1983), 194 Cal.Rptr. 180, 146 Cal.App.3d 200; *Resnick v. Kaplan* (1981), 49 Md.App. 499, 434 A.2d 582; *Woodruff v. Bryant* (1977), Tex.App., 558 S.W.2d 535; *Lavin v. Ehrlich* (1974), Sup., 80 Misc.2d 247, 363 N.Y.S.2d 50; *Frates v. Nichols* (1964), Fl.App., 167 So.2d 77; *Fouchek v. Janicek* (1950), 190 Or. 251, 225 P.2d 783; 59A Am.Jur.2d *Partnership* § 433 (1987).

If there is no contrary agreement, this fiduciary duty extends to work in progress at the time of dissolution. This is true even if the work is completed after the dissolution. In *Hammes v. Frank* (1991), Ind.App., 579 N.E.2d 1348, a law firm dissolved with no partnership agreement. We held that in absence of a partnership agreement, the Indiana Partnership Act governed. Under UPA the income produced by winding up unfinished partnership business was to be distributed to former partners in proportion to their respective shares. *Id.* at 1356. A class action was pending at the time of the dissolution of the law firm. The new firm continued to work on the case to the conclusion but had substituted a class representative. We found the post-dissolution work on that litigation was unfinished work of the former partnership. As unfinished work, we ordered the income the new firm received for this case divided with the old firm. *Id.*

■ This decision applies the general rule holding all partners are entitled to share in fees for pre-dissolution work in progress paid after dissolution to the dissolved partnership or to withdrawing partners even if the client has exercised a right to discharge the attorney who is sharing the fees. *Bromberg and Ribstein on Partnership* (1991 Ed.) § 7.08(e). Only in a situation where a partner dies is the surviving partner of a law firm entitled to compensation completing litigation in pending IC 23-4-1-18(f). However, in an inter vivos case, the general rule is the partner who completed the project is not entitled to extra compensation and the fee should be divided on a pre-dissolution basis. *Id.*

Kelly argues the trial court's decision is illogical because it allows the UPA to control the disposition of assets Kelly removed from the Firm after withdrawal but allows Paragraph 6 of the partnership agreement to control the disposition of those assets remaining with the Firm. He claims the result is an uneven distribution of Firm assets. Further, Kelly argues if his withdrawal clearly terminates the partnership, all the partners should participate in the wind up of all partnership business as provided in Paragraph 15.

The UPA provides for an equal distribution of firm assets on withdrawal of a partner. The only reason to contract regarding dissolution distribution is to depart from this scheme. Here, the partnership agreement covers the majority of issues involved in a partnership. Paragraph 6 of the agreement specifies how the assets from the work in progress are to be valued for the departing partner only. It is written in the singular and the language refers to the interest of the departing partner, not the remaining partners. This limitation favors the continuity of the Firm and discourages partner withdrawal with its attendant

---

brief, and answers to the Firm's interrogatories, we find the trial court's findings were correct.

2. Kelly cites *Bane v. Ferguson* (7th Cir.1989), 890 F.2d 11, for the proposition upon termination, a withdrawing partner no longer has a fiduciary duty to the old partnership to wind up affairs. This case is not on point. The facts of the case involved a retired partner's suit against the new firm for the loss of his retirement benefits. The circuit court held no common law or statutory claim of liability attaches upon the dissolution of a partnership, even though the dissolution results in a breach of contract, if the dissolution is motivated by good faith judgment for the benefit of the partnership rather than personal gain of the managing partner. Dissolution of the partnership was not at issue. Also the court did not address the duties of partners in winding up the partnership.

disruption and economic consequences. Thus, the agreement permits the Firm to mitigate the harsh and sudden effects of solicitation of clients and discourages partners from orchestrating matters prior to withdrawal so they would be in a position to take the most lucrative cases with them in the event of withdrawal. The court does not go behind the parties' agreement and assess the adequacy of consideration in contract cases to assure equal benefits. *See, e.g., Herrera v. Collection Service, Inc.* (1982), Ind.App., 441 N.E.2d 981, 983–984.

 Kelly's argument the court erred by not ordering an accounting of the Firm assets as required by Paragraph 15 misses the point. Paragraph 15 of the partnership agreement provides a full accounting shall be taken upon termination in order to settle up debts, effects, and moneys. Logically, it is to benefit creditors, not departing partners, since Paragraph 6 specifically limits the amount a withdrawing partner is entitled to receive to his net capital account, his vested interest in receivables, and his vested interest in contingent fee cases.

Indiana permits the remaining partners to agree the entity of the partnership may continue notwithstanding the withdrawal of one partner. *See Lawlis,* 562 N.E.2d at 441–444. Here, the partnership agreement foresees the possibility of the continuation of the partnership if one partner should withdraw. Paragraph 17 provides remaining partners shall be entitled to retain possession of the premises and equipment. The remaining partners of the Firm are continuing in business although it is not clear under what type of agreement. Thus, there is no need for an accounting. Further, a court order forcing an accounting would not be relevant to Kelly's duty to the Firm or entitle him to receive more than provided by Paragraph 6 of the agreement.

 Additionally, Kelly strongly contends the trial court's reading of the partnership agreement violates two Indiana rules of professional conduct. First, he maintains it violates Ind. Professional Conduct Rule 1.5(e), which prohibits fee splitting between lawyers not in the same firm where the division of fees was not in proportion to the work performed.[3]

In support of his arguments, Kelly cites cases from many jurisdictions. However, they all have very different factual situations. In *Champion v. Superior Court* (1988), 201 Cal.App.3d 777, 247 Cal.Rptr. 624, *reh. denied,* the court refused to enforce an agreement which entitled the law firm to almost all the legal fees recovered after an attorney withdrew regardless of how much preparation was performed by the firm. The court specifically concluded this was not a termination or winding up of a partnership and noted the fees were unconscionable. In *In re Silverberg* (1980), 75 A.D.2d 817, 427 N.Y.S.2d 480, the court affirmed an arbitration award. The agreement under dispute provided each partner in a dissolving partnership was to pay the other a specified percentage of fees earned from their clients in the eighteen months following dissolution. This agreement was found to be unenforceable as a restriction on the practice of law and an impermissible fee division.

Other jurisdictions have enforced agreements challenged as violating the fee splitting rule. In *Roy v. Gravel* (1990), La. App., 570 So.2d 1175, the court enforced a dissolution contract allocating fees received after dissolution on the grounds it did not involve prohibited fee splitting. It concluded the firm continued a fictional existence as it was being wound up so there was no fee division within the meaning of Prof. Cond.R. 1.5(e). The client knew his lawyer was in a firm so he implicitly agreed to allow the firm to split those fees however the partners in the firm saw fit. Likewise,

---

**3.** Prof.Cond.R. 1.5(e) provides in part as follows:
 A division of fee between lawyers who are not in the same firm may be made only if:
 (1) the division is in proportion to the services performed by each lawyer or, by written

agreement with the client, each lawyer assumes joint responsibility for the representation;
 (2) the client is advised of and does not object to the participation of all the lawyers involved; and (3) the total fee is reasonable.

in *Hendler & Murray v. Lambert* (1989), 537 N.Y.S.2d 560, 147 A.D.2d 444, a later New York case, the court enforced an arbitration award which awarded termination payments paid out of the new ongoing business proceeds to a retired partner. It opined the fee splitting rule did not apply to payments to a former partner.

Adopting the reasoning in *Roy,* we held the fee splitting prohibition contained in Prof.Cond.R. 1.5(e) is not violated when fees earned by the firm during wind up of partnership business after dissolution are allocated among partners, including those who withdraw. The partners have a fiduciary duty to do so, absent an agreement to the contrary expressed in the partnership agreement. Such a result is consistent with our determination that income produced by the winding up of unfinished partnership business is to be distributed to the former partners in proportion to their respective shares in the absence of a contrary agreement. *See, Hammes,* 579 N.E.2d at 1356; *Boushehry,* 550 N.E.2d at 788.

■ Second, Kelly maintains the court's interpretation of the partnership agreement also violates Prof.Cond.R. 5.6, which prohibits lawyers from entering into agreements which restrict the right of a lawyer to practice after termination of a partnership.[4]

Kelly argues the effect of the trial court's order requiring him to pay 80% of the fees received on removed matters restricts his right to practice law. He urges, "[n]o lawyer can sustain a practice by giving to another firm 80% of the fees he collects on a case." Brief of Appellant at 23.

Clauses which restrict competition when a partner withdraws or requires the partner to forfeit his portion of earned fees which had not been collected upon withdrawal have been held to violate Prof. Cond.R. 5.6. *Jacob v. Norris, McLaughlin & Marcus* (1991), 247 N.J.Super. 266, 588

A.2d 1287 (lawful restriction on practice of law to impose a monetary penalty on partners taking the firm's staff or client since moneys were not earned money); *Anderson v. Aspelmeier, Fisch, Power, Warner & Engbeg* (1990), Iowa, 461 N.W.2d 598 (firm's refusal to pay departing partner full value of his earned interest not sanctioned under disciplinary rules); *Cohen v. Lord, Day & Lord* (1989), 551 N.Y.S.2d 157, 550 N.E.2d 410, 75 N.Y.2d 95 (an agreement entered into by parties which restricted the practice of law as a condition to receipt of already earned benefits was unenforceable); *Hagen v. O'Connell* (1984), 68 Or.App. 700, 683 P.2d 563 (provision of a buy-sell agreement was unenforceable because it provided a 40% penalty in corporation stock value if shareholder did not sign noncompetition agreement); *Gray v. Martin* (1983), 63 Or.App. 173, 663 P.2d 1285 (agreement penalizing partner for withdrawing from the firm by giving him only one-half of that to which he was otherwise entitled was unenforceable).

In the instant case, the conditions of departure as governed by Paragraph 6 of the partnership agreement were reasonably limited and plausibly related to preventing a double adverse impact on the Firm as a result of Kelly's departure. It prevented the subjection of the Firm to loss of part of its client base at the same time it was requiring the Firm to pay the partner substantial compensation. The agreement does not seek to divest Kelly of the partnership interest to which he became entitled at the time of withdrawal. He is not prevented from representing new clients or representing the Firm's former clients in new matters. He is not prevented from retaining his percentage of the fees in removed matters. Therefore, Kelly is not prevented from practicing law.

The agreement does not violate Prof. Cond.R. 1.5(e) and 5.6 as they apply in the factual circumstances between the Firm

---

4. Prof.Cond.R. 5.6 reads:
 A lawyer shall not participate in offering or making (a) a partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or (b) an agreement in which a restriction on a lawyer's right to practice is part of the settlement of a controversy between private parties.

and Kelly. The trial court did not err in interpreting the agreement or in finding there were no issues of material fact in dispute, and as a matter of law partial summary judgment should be entered in favor of the Firm.

The Firm contends, by way of cross-appeal, the trial court erred in determining a genuine issue of material fact existed with respect to Kelly's distribution percentage at the time of withdrawal. Kelly, in his motion opposing summary judgment, claimed his interest percentage in the Firm is at least 20.91%. The Firm alleged his interest was 18.09%.

The trial court stated, in pertinent part:

The court further finds as to the above facts there are no genuine issues of any material fact in dispute, that the law is with the Counter–Claimants, and that partial summary judgment in their favor should be entered. There are other genuine issues of material fact in dispute, including the precise percentage allocation to which Timothy F. Kelly is entitled; the appropriate cases of the law firm of Beckman, Kelly, and Smith whose work was in progress at the time of his departure and for which fees were subsequently earned or collected by the Counter–Defendant, Timothy F. Kelly; and the amount of fees earned or collected or to be earned or collected in the future by Timothy F. Kelly for such cases.

. . . . .

7. The issues covered by the Order being sufficiently distinct from the other issues raised by the complaint and by the Counter–Claim, the Court now finds pursuant to T.R. 54(B) and T.R. 54(C) that there is no just reason for delay and hereby directs the entry of a final and appealable judgment in favor of the Counter–Claimants and against the Counter–Defendant on Count I of the Counter–Claim.

Interlocutory orders are not appealable in the absence of proper certification by the trial court. Any order which disposes of less than all issues is not final and appealable unless the trial court (1) expressly determines in writing there is no just reason for delay, and (2) in writing expressly directs the entry of judgment thereon. *Radbel v. Midwestern Electric, Inc.* (1990), Ind.App., 550 N.E.2d 340, 341.

Paragraph 7 of the court's order specifically certifies under T.R. 54(B) and T.R. 56(C) this order is final and appealable as to the issues covered by the order.[5] The issue covered by the order was whether the Firm was entitled to recover all fees already or to be collected in the future by Kelly in all legal matters from clients who were removed by him or in connection with his withdrawal from the Firm. Consequently, other issues not covered by the order including this one were not certified as final. Therefore, the issue the Firm here attempts to present is not appealable.

Further, we are unwilling to exercise our discretion to consider this issue pursuant to Ind.Appellate Rule 4(E). App.R. 4(E) permits the appellate court at its discretion to pass on issues which are severable and can be addressed without prejudice to the parties. While considering this issue, we would be required to determine the percentage of fees Kelly is entitled to keep from removed matters and his vested interest in the Firm's accounts receivable and contingent fee cases. This is a matter the trial court reserved for its later determination. We defer to the trial court.

Thus, we decline both the Firm's and Kelly's urgings to enter judgment on this issue.

Affirmed.

MILLER, J., concurs.

GARRARD, J., dissents with separate opinion.

---

5. Since this case involves a summary judgment, the trial rule involved is T.R. 56(C) which states in pertinent part:

A summary judgment upon less than all the issues involved in a claim or with respect to less than all the claims or parties shall be interlocutory unless the court in writing expressly determines that there is not just reason for delay and in writing expressly directs entry of judgment as to less than all the issues, claims or parties.

GARRARD, Judge, dissenting.

I dissent. While I agree with the majority that the only question available for appellate review is the partial summary judgment entered on the remaining partners' first count of counterclaim, I disagree with its resolution of that issue.

In that count the remaining partners alleged that when Kelly left the partnership he took with him clients and potential clients of the partnership; that he performed legal services for them, and accepted payment therefor; and that the partnership was entitled to all the fees earned in those employments both before and after the partnership dissolution (subject, of course, to Kelly's partnership percentage.) The trial court agreed and granted partial summary judgment so ordering. In my view this was error.

One of the precepts of our legal system is that litigants should be entitled to legal representation by the lawyer(s) of their choosing, assuming the litigant is willing and able to pay the bill and the lawyer is admitted before the court in question. That view is reflected in Rule 5.6 of the Rules of Professional Conduct.

Of course, the former partnership is entitled to treat as an asset work which was in progress on the date of dissolution. The partnership agreement details the manner of valuing that business for hourly matters, flat fee matters and contingent fee cases. The agreement should be applied to all work in progress on the date of dissolution whether retained by the remaining partners or by Kelly.

Recently, in *Hammes v. Frank* (1991) Ind.App., 579 N.E.2d 1348, the court was confronted with the dissolution of a law partnership caused by a split up of the firm. There had been no written partnership agreement, and accordingly (unlike the circumstances present here) no provision covered how work-in-progress was to be handled upon a dissolution. Looking to the Uniform Partnership Act, IC 23–4–1–1 *et seq.* as controlling under those circumstances, the court determined that income produced through the winding up of unfinished partnership business should be distributed to the former partners according to their respective partnership shares. *See* IC 23–4–1–30. I do not disagree with the analysis in *Hammes* except to the extent the court's reasoning appears to focus on the inquiry as to what constitutes "unfinished business" rather than what constitutes "winding up."

Under IC 23–4–1–30, when a dissolution is caused by the withdrawal of a partner, the existence of the partnership continues "until the winding up of partnership affairs is completed." The term "winding up" has special legal significance in the context of partnership law. It refers to the process of settling partnership affairs after dissolution, often called liquidation, and involves reducing the assets to cash to pay creditors and distribute to partners the value of their respective interests. *Dreifuerst v. Dreifuerst* (1979) 90 Wis.2d 566, 280 N.W.2d 335, 338; *see also Weisbrod v. Ely* (1989) Wyo., 767 P.2d 171, 174; *Smith v. Kennebeck* (1973) Mo., 502 S.W.2d 290, 293.

Thus, in the absence of some agreement among the partners as to how work-in-progress assets are to be valued, winding up activity is necessary to determine their worth. But this does not mean that work performed after a dissolution in the ordinary course of business, as opposed to winding-up activity, should or does belong to the previous partnership. This may, additionally, be inferred from IC 23–4–1–18(f) which provides that while a partner is not entitled to remuneration for acting in the partnership business, a surviving partner *is entitled* to reasonable remuneration for his services performed in winding up the partnership affairs. In other words, the line of demarcation is to be drawn at the time of dissolution with recognition that some winding up activity may be necessary.

In the case before us the partnership agreement covers both how work-in-progress assets are to be valued and how partners are to receive payment for their shares. Potentially, minimum winding up activity will be, or was, necessary.

On the other hand, the former partners are not entitled as a matter of partnership law to the fruits of the new, or continuing,

services Kelly performs for former clients of the firm.

The court erred in holding that they were. The partial summary judgment should be reversed.