42 F.3d 1400
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re Oscar Budd KLEINFELD, Debtor.
Oscar Budd KLEINFELD, Defendant-Appellant,
v.
John T. IACOPI, Receiver for Kleinfeld Farms, a California
Partnership, Appellee.
In re Gary Howard KLEINFELD, Debtor.
Gary Howard KLEINFELD, Appellant,
v.
John T. IACOPI, Receiver for Kleinfeld Farms, a California
Partnership, Defendant-Appellee,
and
Lemuel Beck, Lonnie Beck and R.W. Chambers, Appellees.
 Nos. 93-15881, 93-15882.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 3, 1994.
Decided Nov. 16, 1994.
 
 1
 Before: SCHROEDER, RYMER, Circuit Judges, and DWYER, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Oscar Budd Kleinfeld and Gary Howard Kleinfeld each appeal the decision of the district court holding that debts owed by them are not dischargeable in their respective Chapter 7 bankruptcy cases and the district court's determination of the amount of those debts. Oscar also appeals the district court's determination that the receiver of a partnership in which he was a partner has standing to bring an action against Oscar for recovery of the debt. We have jurisdiction under 28 U.S.C. Sec. 158(d). We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. In re Professional Inv. Properties of America, 955 F.2d 623, 626 (9th Cir.), cert. denied, 113 S.Ct. 63 (1992). We affirm the district court's determination that the debts were nondischargeable and that the Receiver had standing. However, we modify the determination of the amount of damages.
 
 
 4
 * Oscar and Gary were general partners in Kleinfeld Farms ("the Partnership") together with Lemuel Beck, Lonnie Beck and R.W. Chambers ("the Beck group") and Bernard and Harold Berg, who are not parties to these proceedings. In April 1988, a majority of the general partners decided to terminate the Partnership's operations. On May 4, 1988, the San Joaquin County Superior Court appointed John T. Iacopi ("the Receiver") as liquidating receiver of the Partnership. This consolidated appeal involves actions by the Receiver against both Oscar and Gary for the recovery of capital calls owed to the Partnership. Oscar asserts that the Receiver exceeded the scope of his authority in bringing an action against him to recover the capital calls. Both the bankruptcy court and the district court held that the action against Oscar was within the scope of the Receiver's authority.
 
 
 5
 Under California law, the authority of a receiver to bring a legal action is confined to that expressly or specially authorized by statute or the appointing court. Morand v. Superior Court In & For City and County of San Francisco, 113 Cal.Rptr. 281 (Ct.App.1974). In this case, the Superior Court authorized the Receiver to "bring suit against any and all partners of the partnership for causes of action arising out of any failure to make capital contributions to the partnership." The bankruptcy court found that, although Oscar nominally made the called-for capital contributions to the Partnership, he did not do so with fresh, outside funds, but with funds that were already owed to the Partnership. Thus, the court found that while Oscar made the capital contributions in form, he did not do so in substance. Since the bankruptcy court did not clearly err in making this determination, the Receiver's complaint asserts a failure to make capital contributions. Consequently, this action is within the Receiver's authority as granted by the Superior Court.
 
 II
 
 6
 Oscar and Gary assert that the district court erred in holding that the debts owed to the Receiver and to the Beck group were nondischargeable in their Chapter 7 cases. Debts incurred by the commission of fraud or defalcation while acting in a fiduciary capacity are nondischargeable. 11 U.S.C. Sec. 523(a)(4). The district court held that Oscar and Gary, as general partners, owed fiduciary duties to the Partnership and the other general partners. It further held that, as principals of Kleinfeld Farms, Incorporated ("KFI"), a corporation that purchased eggs from the Partnership, Oscar and Gary owed fiduciary duties to the Partnership, as a creditor, when KFI became insolvent.
 
 
 7
 We need not reach the issue of whether Oscar and Gary owed fiduciary duties to the Partnership within the meaning of Sec. 523(a)(4) in their capacity as principals of KFI, because we agree that they owed such duties as general partners of the Partnership. Whether a debtor's fiduciary status under state law renders him a fiduciary within the meaning of Sec. 523(a)(4) is an issue of federal law. Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir.1986). The trust giving rise to a fiduciary relationship recognized by Sec. 523(a)(4) must not be a mere trust ex maleficio; rather, it must be imposed prior to any wrongdoing. Id. The debtor must be a "trustee" before the wrong and without reference to it; constructive, resulting or implied trusts do not render a debtor a "fiduciary" within the meaning of Sec. 523(a)(4). Id.
 
 
 8
 In Ragsdale, we held that the fiduciary duties imposed on partners by California case law satisfy the strict requirements of Sec. 523(a)(4). Oscar and Gary argue that Ragsdale should be read to impose fiduciary duties only between partners, and not between a partner and the partnership entity. There is no basis for such a narrow reading. Ragsdale involved a two-person partnership and thus, unsurprisingly, it spoke in terms of duties owed to a partner instead of the partnership. Ragdale's source of partnership fiduciary duty under California law was Leff v. Gunter, 189 Cal.Rptr. 377 (Cal.1983), which relied upon two cases holding that a partner has fiduciary duties to the partnership entity. See Lavin v. Ehrlich, 363 N.Y.S.2d 50 (N.Y.Sup.Ct.1974), and Fouchek v. Janicek, 225 P.2d 783 (Or.1950). Thus, under Ragsdale, Oscar and Gary owed fiduciary duties to the Partnership, and debts incurred in the breach of these duties may be nondischargeable under Sec. 523(a)(4).
 
 
 9
 Further, Oscar and Gary incurred their debts to the partnership and to their partner, the Beck group, through defalcation. For the purposes of Sec. 523(a)(4),
 
 
 10
 [a] defalcation is a failure of a party to account for money or property that has been entrusted to them. In the context of section 523(a)(4), the term "defalcation" includes innocent, as well as intentional or negligent defaults so as to reach the conduct of all fiduciaries who were short in their accounts.
 
 
 11
 In re Baird, 114 B.R. 198, 204 (9th Cir.B.A.P.1990) (citations omitted). Because Oscar and Gary owed fiduciary duties to the partnership, their handling of KFI funds, at a time when KFI had substantial outstanding debt to the Partnership, was subject to heightened scrutiny. The bankruptcy court found that Oscar and Gary met their capital calls to the Partnership with funds borrowed from KFI, and that these funds would otherwise have been paid to the Partnership to reduce KFI's trade debt. The bankruptcy court further found that Oscar and Gary did not disclose the source of these funds to the other partners. This failure to disclose a material fact--that the Kleinfelds' capital contributions to the Partnership were, in essence, being made with money that the Kleinfelds should have caused KFI to pay to the Partnership--amounted to defalcation within the meaning of Sec. 523(a)(4).
 
 
 12
 Similarly, the undisclosed diversion to KFI of the $200,000 Bank of Stockton loan, intended for the Partnership, and the undisclosed borrowing from KFI of funds to pay the loan proceeds to the Partnership constituted defalcation in a fiduciary capacity. The payment to the Partnership did not "cure" the diversion because, as the bankruptcy court found, those funds came from moneys that would otherwise have been paid to the Partnership in satisfaction of KFI's outstanding trade debt.
 
 
 13
 The outstanding trade debt was also properly found to be a debt incurred through defalcation in a fiduciary capacity. As the bankruptcy court found, the effect of the Kleinfelds' illusory capital contributions and nondisclosures was to prolong the operation of both KFI and the Partnership at a time when neither entity could hope to become profitable. Gary, as managing partner of the Partnership, continued to cause the Partnership to ship eggs to KFI, knowing that KFI was not paying for the eggs. This conduct amounted to a failure to adequately account for the assets of the Partnership, and thus was a defalcation.
 
 
 14
 Gary argues that the debts cannot be found to be nondischargeable because a personal benefit to the debtor is a prerequisite to a determination of defalcation or fraud under Sec. 523(a)(4). Because even "innocent conduct" can ground a finding of defalcation, a personal benefit to the debtor is not required. Baird, 114 B.R. at 204. See also In re Cowley, 35 B.R. 526, 529 (Bankr.D.Kan.1983). Even if personal benefit were required, the bankruptcy court's finding that the diversions constituted a personal benefit was not clearly erroneous. Thus, we hold that the outstanding trade debt is nondischargeable under Sec. 523(a)(4).
 
 III
 
 15
 The Kleinfelds assert that the bankruptcy court's findings concerning damages are not supported by the evidence. The district court agreed in part with the Kleinfelds and modified the damages.
 
 
 16
 The bankruptcy court awarded the Receiver $223,750 against Oscar and $77,917 against Gary. These amounts corresponded to the capital contributions made by Oscar and Gary via undisclosed borrowing from KFI, and are supported by the evidence.
 
 
 17
 The bankruptcy court also awarded to the Beck group damages in the amount of any liability they may have to the Bank of Stockton on the $200,000 loan diverted to KFI. The eventual payment in this amount by the Kleinfelds to the Partnership was correctly found illusory by the bankruptcy court. The ability of the Partnership to pay its creditors was not enhanced by this payment, and the Beck group is liable to the Bank of Stockton on this loan. The record supports the award of these damages.
 
 
 18
 The Beck group separately claimed $311,667, the amount of the capital contributions it made in reliance on the belief that the Kleinfelds were meeting their capital calls with "fresh" money. The bankruptcy court declined to award this amount to the Beck group unless the award to the Receiver should be reversed or vacated on appeal, finding that it would be a windfall for the Beck group if the Partnership's injury were to be redressed and they could also, in essence, rescind their own contributions. The district court, however, awarded the $311,667 to the Beck group. We hold that the bankruptcy court was correct that such an award would constitute double recovery. Hence, the district court's award of the $311,667 to the Beck group is reversed.
 
 
 19
 The bankruptcy court awarded to the Beck group the entire amount of KFI's outstanding trade debt, equal to $641,290.55. The district court took issue with this conclusion in two respects. First, it concluded that the award should not be to the Beck group individually, but rather for the benefit of the Partnership. The Beck group does not challenge that determination.
 
 
 20
 Second, the district court concluded that the award based on the outstanding trade debt should be reduced, on grounds of double recovery, by the amount of the award in favor of the Receiver for the illusory capital contributions ($301,667) and by the amount for which Gary is liable to the Beck group in connection with the $200,000 Bank of Stockton loan. The theory of the Beck group and the Receiver is that the Kleinfelds made their contributions to the Partnership by borrowing from KFI and allowing KFI's debt to the Partnership to inflate. These amounts having been recovered, it would constitute double recovery also to award that part of the trade debt that represents the same funds. The district court's modification of the award on account of the outstanding trade debt is affirmed.
 
 
 21
 AFFIRMED AS MODIFIED.
 
 
 
 *
 The Honorable Dwyer William L. Dwyer, United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3